# Twenty-Eighth Congressional District Nomination.

*Election law—Congressmen—Nominations—Primary election—Recount—Acts of July 12, 1913, P. L. 719, and July 9, 1919, P. L. 852—Appeals—Certiorari—Considering opinion of court below.*

1. Section 15 of the Act of July 12, 1913, P. L. 719, as amended by the Act of July 9, 1919, P. L. 852, does not authorize the commissioners, in computing the vote cast at a primary election, or the court on appeal from their action, to determine the qualifications of those who actually voted, or to exclude a poll because of defects in the election machinery.

2. Only such matters can be considered on a contest of the election, which "shall originate and be conducted as in cases of general elections."

3. The only effect of the provision authorizing a recount of the ballots—although the fraud or error alleged is "not manifest upon the general return of the votes" made by the election officers—is to make clear the right to a recount, although the returns are in all respects regular and complete and consonant with each other.

4. The duty imposed upon the court, on an appeal from the action of the commissioners in computing the vote, to "make such decree as right and justice may require," is not greater than the duty of the latter to "correct, compute and certify the votes of such election district justly, regardless of any fraudulent or erroneous returns made by the election officers."

5. The provisions in said acts that "no appeal shall be allowed from any order or decree of the court of common pleas in pursuance of this section," does not prevent an appellate court from considering jurisdictional matters on certiorari.

6. In considering such matters in election cases, the appellate court may examine the opinion of the court below, in order to discover the reasons for its action.

Argued September 27, 1920. Appeal, No. 163, Oct. T., 1920, by David Evans et al., from order of C. P. Mercer Co., Oct. T., 1920, No. 31, directing returns not to be counted in the matter of the Republican Nomination for the office of congressman for the 28th Congressional District in the State of Pennsylvania. Before Brown, C. J., Stewart, Moschzisker, Frazer, Walling, Simpson and Kephart, JJ. Reversed.

Appeal from decision of board of county commissioners sitting as return board in count of ballots cast at primary election of May 18, 1920. Before McLaughry, P. J.

Willis J. Hulings, intervening appellee, moved to quash the appeal.

The opinion of the Supreme Court states the facts.

The court below entered the following decree: "Now, August 7, 1920, it is ordered, directed and decreed that, of the returns in the Primary Election of May 18, 1920, in the County of Mercer, the returns of the election officers for the First Ward of the Borough of Farrell shall not be counted, but the returns shall be corrected by

striking out the votes for the various officers and inserting nothing."

David Evans et al. appealed.

*Errors assigned* were (1) in assuming jurisdiction to consider alleged illegality of election owing to arrangement of polling room, (2) in directing vote to be rejected for reasons given in opinion of court, quoting it, (3) decree, quoting it.

*T. R. White,* with him *J. R. W. Baker, J. A. Stranahan, Jr.,* and *E. B. Richards,* for appellants.—Neither the county commissioners nor the court below, upon appeal from their decision, had jurisdiction to consider the question of the legality of the equipment of the polling place: Phillips's App., 262 Pa. 396.

This proceeding is upon the common law writ of certiorari, as no appeal is permitted by the statute. It has, however, been repeatedly held by this court that in such cases it will examine the opinion of the court below to ascertain the reasons for its decree and, if it finds them erroneous, will reverse the decision: Krickbaum's Election, 221 Pa. 521; Von Moss's Election, 219 Pa. 453; Chester County Republican Nominations, 213 Pa. 64; Independence Party Nomination, 208 Pa. 108; Hand's Case, 266 Pa. 277.

The provision in the Act of July 9, 1919, P. L. 839, that there shall be no appeal from decisions of courts of common pleas reviewing the action of county commissioners was not intended to prevent the removal of the record into this court by certiorari for the purpose of correcting errors apparent on the face of the record: Rand v. King, 134 Pa. 641; Independence Party Nomination, 208 Pa. 108; Katharine Water Co., 32 Pa. Superior Ct. 94; Pittsburgh B. & B. Supply Co.'s Mercantile Tax, 38 Pa. Superior Ct. 121; Schmuck v. Hartman, 222 Pa. 190; Com. v. Beaumont, 4 Rawle 366; Hagerty's Case, 4 Watts 305; Com. v. Betts, 76 Pa. 465.

Irrespective of the meaning of the Act of 1919, the record of the court below is properly before this court by certiorari in order to determine whether the court below acted within its powers and in accordance with law: Rand v. King, 134 Pa. 641; Christner v. John, 171 Pa. 527; Com. v. Beaumont, 4 Rawle 366; Hagerty's Case, 4 Watts 305; Com. v. Betts, 76 Pa. 465; Chase v. Miller, 41 Pa. 403; McNeill's Election, 111 Pa. 235; Schmuck v. Hartman, 222 Pa. 190; Hand's Case, 266 Pa. 277; Murdy v. McCutcheon, 95 Pa. 435.

*C. E. Brockway,* for appellee, cited: Somerset Primary Election Contest (No. 1), 26 Pa. Dist. R. 519; Phillips's App., 262 Pa. 396.

OPINION BY MR. JUSTICE SIMPSON, December 31, 1920:

At the primary election held May 18, 1920, Harris J. Bixler and Willis J. Hulings were rival candidates for the Republican nomination for the office of congressman in the 28th congressional district of this State. Upon the returns, as made by the election officers, it appeared Bixler had been nominated by a small plurality, whereupon a petition was duly filed with the county commissioners, sitting as a returning board, asking a recount of the votes, inter alia, in the first election district of the Borough of Farrell in Mercer County, and also the rejection of that entire poll, upon the grounds, (1st) That the election booth therein "was not equipped according to law, in that no guard rail was constructed or erected in said polling place, and that the voting booths and the ballot box were at all times within six feet of all persons within said polling place, regardless of whether they had voted or not"; (2d) "That more than one hundred votes had been cast at said primary election in said election precinct by persons who were not registered or enrolled as members of any political party"; and (3d) "That an error was made in the count of the actual ballots cast at said election."

When the recount was made it appeared Bixler had still a majority of the votes found in the ballot boxes; but the commissioners rejected the entire vote of the precinct because the evidence showed a number of the votes had been cast by persons who, while they had been duly enrolled as Republicans by the assessor, were not so recorded upon the list furnished to the election officers by the commissioners themselves. The effect of this was to change the result and nominate Hulings. Bixler thereupon appealed to the court of common pleas, which disagreed with the reason given by the commissioners, but sustained their judgment because the evidence showed there was no guard rail inside the polling place, and therefore, under Cramer's Election Case, 248 Pa. 208, the entire vote there cast was illegal and should be rejected. The present appeal was then taken, and shortly after the argument thereof we made the following order: "Appeal sustained and it is ordered that of the returns in the Primary Election of May 18, 1920, in the County of Mercer, the returns of the election officers in the First Ward of the Borough of Farrell be counted and the votes computed accordingly." No opinion was then filed because there was not sufficient time to prepare it without so long delaying the printing of the ballots as to render it difficult if not impossible to have them ready for the ensuing election. It remains now but to give the reasons for our order.

Section 15 of the Act of July 12, 1913, P. L. 719, as amended by the Act of July 9, 1919, P. L. 852, provides as follows: "Upon the sworn affidavit of three qualified electors of any election precinct, division, or district of any county that, upon information which they consider reliable, they believe an act of fraud or error, although not manifest upon the general return of votes made therefrom, has been committed therein, the return board shall, at any time prior to the completion of the computation and canvassing of all the returns for the county, open the ballot-box of such election district, and cause

the entire vote thereof to be recounted in manner aforesaid, and if they discover any fraud or material error, they shall correct, compute, and certify the votes of such election district justly, regardless of any fraudulent or erroneous returns made by the election officers thereof. ......Any person aggrieved by any order or decision of any return board, not consisting of a judge or judges of the court of common pleas, regarding the computation or canvassing of the returns, or by a refusal to open the ballot-box of any election district upon a proper petition as aforesaid, may appeal therefrom, within two days thereafter, to the court of common pleas of the proper county, setting forth why he feels that an injustice has been done, and praying for such order as will give him relief......The court on such appeal shall have full power and authority to hear and determine all matters pertaining to any fraud or error committed in any election district to which such appeal relates, and to make such decree as right and justice may require......but none of the orders or decisions of either the return board or any judge or judges acting as a return board or the court of common pleas on any appeal shall be deemed a final adjudication regarding the results of any primary election so as to preclude any contest thereof. Contests of primaries shall originate and be conducted as in cases of elections. No appeal shall be allowed from any decision of any judge or judges acting as a return board or from any order or decree of the court of common pleas made in pursuance of this section......."

It will be noticed that this section deals with two well known matters in regard to general elections, (1) The computation and certification of the votes as returned, and (2) An election contest after the computation of the returns have been concluded and the result announced. The only changes alleged to have been made by this statute, are the addition of the words "although not manifest upon the general return of votes made therefrom," and the provision that it shall be the duty of the

court of common pleas to "make such decree as right and justice may require."

In construing the Acts of April 28, 1899, P. L. 127, and May 6, 1909, P. L. 425, relating to the computation of the votes cast at general elections, the judges of the courts of common pleas, sitting as boards of return judges, had differed touching their authority to open the ballot boxes and recount the votes therein, even though fraud or mistake was alleged, if the returns made by the election officers were regular and complete and each agreed with all the others. Deeming it necessary to resolve this doubt in favor of granting the power, the legislature made the first of the above changes, and hence, by considering "the old law, the mischief and the remedy," we have no difficulty in deciding that the only effect of this provision of the statute is to certainly authorize a recount of the ballots cast at primary elections, upon proper cause being shown, even though the returns were in all respects regular and consistent; and any attempt to determine the qualifications of voters, or to exclude a poll because of defects in the election machinery, goes beyond this purpose, and hence is not covered by the change made. These and all other matters, not relating to the computation of the votes actually cast, are to be decided by contests (as was Cramer's Election Case, supra, relied on by the court below), which "shall originate and be conducted as in cases of general elections."

Much of the above applies also to the contention regarding the power and duty of the court "to make such decree as right and justice may require." The only authority given to it on appeal is to "hear and determine all matters pertaining to any fraud or error committed in any election district," which is exactly the power given to the return board where they are charged with the duty to "discover any fraud or material error" therein; and the duty of the court to "make such decree as right and justice may require" is not greater than the provision that the board "shall correct, compute and certify the

votes of such election district *justly,* regardless of any fraudulent or erroneous returns made by the election officers thereof." If the former clause was so construed as to extend the court's jurisdiction over matters which do not directly relate to correcting fraudulent or erroneous returns,—which is the subject-matter being dealt with,—there would be no limit to its jurisdiction over nominations, and the right to contest an election would be a needless privilege, despite the express statement that the court's decision shall not "be deemed a final adjudication regarding the results of any primary election so as to preclude any contest thereof." It cannot be supposed the legislature intended the whole matter to be gone over by two different tribunals, viz: the common pleas on the computation of the vote, and the quarter sessions on a contest. On the contrary, it is clear to us the power "to make such decree as right and justice may require" necessarily means only the making of a right and just decree regarding the matter the court is expressly authorized then to investigate (verba generalia restringuntur ad habilitatem rei vel personam); a conclusion in accord with the general rule that an appeal alleging "injustice has been done and praying for such order as shall give him relief" from such injustice, will be construed to cover the injustice specified and that only, in the absence of a clear statutory provision extending its scope, which is not here shown. Any other conclusion might result in great "injustice" to the opposite party, who would naturally suppose no other objection was made to the election save that set forth in the original petition presented to the return board, and hence would not institute counter proceedings.

It follows from what has been said that neither the absence of the guard rail, nor the alleged mistake of the election officers in allowing certain electors to vote for this office, were matters within the purview of the court computing the vote and certifying the return; but were solely subjects for a contest as theretofore they had been

in general elections. The necessity for keeping the inquiry within its appropriate limits was made evident in the present proceedings, for it was asserted without contradiction that in a number of other election divisions, which had given a majority of their votes for Hulings, there was the same absence of a guard rail. If this question were raised on a contest, the respondent would have a right not only to answer as to the fact touching this particular division, but also to raise the same question regarding other divisions. We are of opinion, therefore, the order heretofore made was a correct disposition of the case.

Appellee made a motion to quash because of the provision that "no appeal shall be allowed......from any order or decree of the court of common pleas made in pursuance of this section." This, however, does not affect our right to issue a certiorari in order to determine, from an inspection of the record, whether or not the court below exceeded its jurisdiction: (Carpenter's Case, 14 Pa. 486; Com. v. Balph, 111 Pa. 365; Com. v. Smith, 185 Pa. 553), and for this purpose to examine the opinion of the court in order to discover the reasons for its action: Nomination Certificate of John S. Robb, Sr., 188 Pa. 212; Cramer's Election Case, 248 Pa. 208. The motion to quash is, therefore, overruled.

We should perhaps add that, in the consideration of the main question, we did not forget that in the matter of the contest of the election of Harry C. Ransley as the Republican nominee for Congress in the 3d Congressional District, we decided that no contest is authorized in the case of congressional nominations. This is due, however, to the fact that the legislature has not yet authorized a contest in such cases, and cannot operate to cause the words above quoted, which are general and apply to all cases of computing and certifying the returns, to have a different meaning in one from that which they have in all others.

Mr. Justice FRAZER dissented.