## Carbondale's Election.

*Election law—Contest—Missing return—Opening ballot boxes—Counting ballots by court commissioners—Fraud—Acts of April 28, 1899, P. L. 127; May 6, 1909, P. L. 425, and May 19, 1923, P. L. 267—Appeal—Finding of fact.*

1. Where a return made by election officers is missing or is mistaken, inconclusive, manifestly erroneous or palpably fraudulent, the computing judges sitting for the purpose of certifying the correct outcome of the balloting have the power, under the acts of April 28, 1899, P. L. 127; May 6, 1909, P. L. 425, and May 19, 1923, P. L. 267, to open the ballot box to see what was the true result.

2. Where a return is inadequate and incomplete, and in effect no return at all, it is a missing return within the meaning of the acts.

3. Where the court, on sufficient cause shown, has ordered the ballot box to be opened, it may order a recount by sworn assistants appointed by the court, but the recount should be, if possible, in the presence of the election officers.

4. A finding of the court, based on the inspection of the ballots and the credibility of the witnesses, that there had in fact been no tampering with the ballots, is, on appeal, entitled to the fullest credit, and will not be reversed in the absence of manifest error.

5. The court may certify a recount after the statutory period for an election contest has expired, and after the expiration of the three days provided by the statute, where it appears that nothing prevented the beginning of a contest within the statutory period, and that a decision within three days after the returns were brought into court, was not possible owing to contestant's delay in the proceedings.

6. The fact that four more ballots were found in the box than on the voters' check list, does not warrant the throwing out of the entire district and disfranchising a large number of voters.

7. Such a discrepancy may be explained on the theory that errors frequently arise by reason of omissions to check or record the name of voters who in fact cast their ballots.

Argued February 25, 1924. Appeals, Nos. 296-299, Jan. T., 1924, by Harry Wright et al., contestants, from orders of C. P. Lackawanna Co., Jan. T., 1924, No. 304, certifying vote in election returns of the Third District of the First Ward of the City of Carbondale. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Petition in election contest. Before NEWCOMB and MAXEY, JJ.

The opinion of the Supreme Court states the facts.

Certificates of voters as computed by the sworn assistants of the court, ordered. Harry Wright et al., contestants, appealed.

*Error asigned* was, inter alia, order, quoting record.

*Wallace G. Moser,* with him *Charles P. O'Malley* and *B. L. Stone,* for appellant.—The court had no jurisdiction to recount the ballots: Com. ex rel. v. Emminger, 74 Pa. 483; City of Carbondale School Director, 22 Lackawanna Jurist 333; Election of School Directors, 17 W. N. C. 373; Election of Constable in 25th Ward, 17 W. N. C. 37; Election of Common Council, 2 Pa. Dist. R. 396; Moock v. Conrad, 155 Pa. 586.

If the court did have jurisdiction to recount the ballots in the box it could not be exercised in the face of affirmative proof that the ballots had been tampered with: Rink v. Barr, 16 Phila. 445; Ewing v. Filley, 43 Pa. 384; In re Duffy, 4 Brewster 531.

The court in a contest will purge the return of the fraud if possible, but where it isn't they will throw out the return: Rink v. Barr, 16 Phila. 445; Conway v. Carpenter, 11 W. N. C. 162; Zacharias's Election, 3 Pa. C. C. R. 656; Mann v. Cassidy, 1 Brewster 11; Sheppard's Case, 65 Pa. 20; Melvin's Case, 68 Pa. 333.

*Clarence Balentine,* with him *Stanley F. Coar* and *David J. Reedy,* for appellees.—Prior to the Act of 1919, a certiorari brought up only the record and the Supreme Court could not decide whether the refusal to open the ballot box is right or wrong, and the rule in all cases is omnia presumuntur rite esse acta: Mitton's App., 2 Penny. 380; Pasquinelli v. Mfg. Co., 272 Pa. 468.

The triplicate return sheet may be considered either an incomplete return or a missing return. The attack upon it by appellants justified the court in concluding that the erasures upon it warranted the issuing of summary process for the election officers to come in and explain its condition.

The court had jurisdiction under the Act of 1923 and the other acts in pari materia, to open the box if a doubt still existed that the triplicate return sheet was a just return.

OPINION BY MR. JUSTICE SCHAFFER, March 24, 1924:

When the Court of Common Pleas of Lackawanna County came to compute the returns for the election held November 6, 1923, it was confronted with this situation in the Third District of the First Ward of the City of Carbondale: There was but one triplicate return sheet returned which was signed only by the judge of election, not by any of the other election officers, and certified to by the democratic overseer. If this paper was accepted and the votes counted as shown on it, the democratic candidate for mayor had a majority of votes in the city and was entitled to be certified as elected; if not accepted and the vote of the district not counted, the republican candidate would win. What was the court to do, accept the incomplete return and compute the vote from it, throw out the entire district, or open the ballot box, see what it disclosed and count the ballots to ascertain what was the actual result of the balloting? The latter course was pursued and the computing board directed to count the ballots in the box, which verified the incomplete return so far as the office of mayor is concerned, with the result that the democratic mayoralty candidate headed the poll in the city and was duly certified as elected. These appeals followed. While there are four of them, the only office involved is that of mayor, as the court found: "Whether we accept the return of votes in the Third District of the First Ward of Carbondale as signed by Gentile and Caviston, or the return of votes as the two inspectors and the two clerks and the republican overseer claim it should have been returned, or whether we accept the return of the computing board based upon a careful count of the ballots in the box, Hart would still be elected city treasurer and Golden and Kerins would be elected school directors of the City of Carbondale."

The position of counsel appearing before us in support of the appeals is that (1), in the absence of a return by the election officers, the court had no jurisdiction to open

the box, count the ballots and certify the result; (2) if the court had jurisdiction to open the box and count the ballots, it could not be exercised, since it was charged that the judge of election had fraudulently altered the ballots in the box, that there were more ballots in it than voters on the voters' check list and because there was no charge by a qualified elector of palpable fraud or error, as provided for by section 1 of the Act of April 28, 1899, P. L. 127, as amended by section 1 of the Act of May 19, 1923, P. L. 267; (3) the court had no authority to certify a recount after the statutory period for an election contest had expired and after the expiration of the time (3 days) in which the election statute requires a decision upon a proceeding to correct palpable fraud or mistake.

Having in view that the purpose in holding elections is to register the actual expression of the electorate's will, it is to our minds impossible of conclusion, if justice is to be done and the true result of the poll be made manifest, where the return made by election officers is mistaken, inconclusive, manifestly erroneous or palpably fraudulent, that the computing judges sitting for the purpose of certifying the correct outcome of the balloting have not the power, indeed the duty, to go into the ballot box itself to see what was the true result. If a return is in such shape either from mistake, ignorance or fraud that in fairness nothing can be predicated upon it, certainly it could not be properly determined, with the evidence in the ballot box as to what was the true vote, that the court sitting to make that determination must find its hand palsied when it would raise the lid of the box to obtain the answer from its contents, otherwise impossible of answer, with the resulting wrong that those whose wish had been expressed in the receptacle are disfranchised, unless some legislative enactment forbids. On the contrary, we think section 13 of the Act of January 30, 1874, P. L. 31, as amended by the Acts of April 28, 1899, P. L. 127, May 6, 1909, P. L. 425, and May 19,

1923, P. L. 267, expressly provides for so doing when it says "the return......shall be opened by said court and computed by such of its officers and such sworn assistants as the court shall appoint, in the presence of the judge or judges of the court......and in case the return of any election district *shall be missing* [a proper return in the present case was absent] when the returns are presented, or in case of complaint of a qualified elector under oath, charging palpable fraud or mistake..... or where fraud or mistake is apparent on the return, the court shall examine the return, and if in the judgment of the court *it shall be necessary to a just return,* said court shall issue summary process against the election officers and overseers, if any, of the election district complained of, to bring them forthwith into court, with all election papers in their possession; and if palpable mistake or fraud shall be discovered, it shall, *upon such hearing as may be deemed necessary to enlighten the court,* be corrected by the court, and so certified; but all allegations of palpable fraud or mistake shall be decided by the said court within three days after the day the returns are brought into court for computation; and the said inquiry shall be directed only to palpable fraud or mistake, and shall not be deemed a judicial adjudication to conclude any contest now or hereafter to be provided by law."

This is in reality the case of a missing return as the one before the court was inadequate and incomplete and in effect no return at all. The attack upon it as made by the judge of election and overseer, was begun through a petition filed by appellants, in which it was alleged there had been a fraudulent transfer of 30 votes, which were cast for the republican candidate for mayor, to his democratic competitor after the first count of the ballots, that the judge of election had erased this number of tallies on the tally sheet for the republican candidate and added them to the tally for the democratic candidate, and had falsified the true count on the return sheet

which was signed by him and the overseer. Thereupon the court issued summary process to the election officers, who came into court, and, upon examination, five of them testified that, after the count of the ballots had been completed and tallied, and the tally sheet signed by all of them, the judge of election falsely and fraudulently erased and altered the tally paper so as to defeat the republican candidate for mayor, that the papers in court were copied from the fraudulently altered tally sheet, and for that reason they did not sign the returns sent to court.

As a result of this testimony, on Monday, November 12th, the court handed down an opinion sustaining the objection made on behalf of the appellants, but ordering a recount of the ballots in the box, to which order an objection was made by appellants, which was overruled and exception noted. When this purpose to open the box was decided upon, and not until then, did appellants set up the claim that the ballots therein did not correctly evidence the vote as cast, and charges that the judge of election, after the first count was completed, had taken ballots therefrom and fraudulently marked them for the democratic candidates. Testimony was taken as to this and the court found that the used ballots and stubs all corresponded and the unused ballots were all accounted for. In the opinions filed, it is stated: "All the election officers were sworn and examined on November 10th, yet none of them even suggested that there had been any tampering with the ballots, the only allegation then being that they were not correctly counted.......Immediately after we ordered the ballots in the box recounted, the petitioners, through their attorney, alleged that the ballots had been tampered with. Thereupon, on November 13, 1923, the court proceeded to further hearing." Speaking of what was shown in support of the allegation of tampering with the ballots and in connection therewith as to the ballots themselves, the court said: "For any member of the board to defeat Wright for mayor by

tampering with the ballots it would have been necessary to have fraudulently altered at least 22 ballots, and unmistakable evidence of such fraudulent alteration would have been found in the ballots themselves, yet as a matter of fact there were erasures on only two ballots. If there had been evidence of erasures of a cross after the name of Harry Wright, the republican candidate for mayor, on 22 or more ballots, and on all of the same ballots a cross placed after the name of his opponent, thereby substituting a vote for Healey for a vote for Wright; or if there had been evidence of erasure after the word 'Republican' on 22 ballots and a cross after the word 'Democratic' on the same ballots, thereby substituting a straight democratic vote for a straight republican vote, we would probably conclude that the election crook had gotten in his foul work by his usual methods; but such evidence is totally lacking here.......The ballots also disclosed that there were 23 otherwise straight democratic ballots each of which contained a vote for Wright, the republican candidate for mayor, but that there was only one otherwise straight republican ballot that contained a vote for Healey. Apparently, then, no one had tampered with the ballots by placing crosses after the name of Healey on the straight republican ballots. When counsel for petitioners was asked by the court to explain how Gentile [the judge of election] could have tampered with the ballots to the extent of adding 30 or any other number of votes to the total of the democratic candidates for mayor and other officers and subtracting a like number from the republican candidates, without there being some evidence of erasures on the ballots or some evidence of substitution (and there was no evidence of either), counsel had to admit that he could not offer any explanation." The court concluded: "We found nothing in the condition of the ballots that tends to confirm in the slightest degree the allegation that the judge of election tampered with any of them......The only changes made were the changes on the tally sheet made

by him to correspond to the recount on the office of mayor and these changes were made openly in the presence of the other election officers and county detectives and state police." This is most peculiarly a case where the findings of the court below are entitled to the fullest credit (Browne v. Hoekstra, 279 Pa. 418; Hardinge v. Kuntz, 278 Pa. 232) as they are based upon what came to the eyes of the judges by their inspection of the ballots and on the credibility of witnesses. The questioning of the return of the judge of election and overseer by the appellants justified the court in concluding that the erasures on it required explanation by the election officers and also warranted looking into the best evidence, the ballots themselves, to test its accuracy; as appellants also impugned their integrity, this was an added reason why it was proper to open the box. The action of the court was in consonance with what was said by us, speaking through Mr. Justice SIMPSON, in Twenty-eighth Congressional District Nomination, 268 Pa. 313, 319: "In construing the Acts of April 28, 1899, P. L. 127, and May 6, 1909, P. L. 425, relating to the computation of the votes cast at general elections, the judges of the courts of common pleas, sitting as boards of return judges, had differed touching their authority to open the ballot boxes and recount the votes therein, even though fraud or mistake was alleged, if the returns made by the election officers were regular and complete and each agreed with all the others. Deeming it necessary to resolve this doubt in favor of granting the power, the legislature made the first of the above changes, and hence, by considering 'the old law, the mischief and the remedy,' we have no difficulty in deciding that the only effect of this provision of the statute is to certainly authorize a recount of the ballots cast at primary elections, upon proper cause being shown."

We conclude that when sitting as return judges to compute the vote cast at an election the court has authority under the act of assembly, whenever in its opinion "it

shall be necessary to a just return," to order the opening of a ballot box and the recounting of the votes. This should be done, if possible, in the presence of the election officers, so the court may be advised by them as to anything affecting the integrity of the ballots as they are found in the box.

We have not adverted to all the facts and circumstances shown by the record connected with this proceeding and the election out of which it grows and pointed to by counsel in their arguments and briefs, deeming it not necessary in determining the legal questions involved; we have, however, considered them all, giving full weight to those stressed by appellants; having done so, we are not convinced the court below erred in the conclusion reached.

As to the right of the court to certify a recount of the ballots after the statutory period for an election contest had expired, and after the expiration of the time provided by the statute (3 days) for a decision upon a proceeding to correct palpable fraud or mistake, suffice it to say that nothing prevented appellants from beginning a contest proceeding within the statutory period. A decision within three days after the returns were brought into court was not possible, because appellants did not raise the question of the manipulation of the ballots until that time had expired.

Concerning the circumstance that there were four more ballots in the box than on the voters' check list, the court below determined that this discrepancy was explainable on the theory that such errors frequently arise by reason of omissions to check or record the names of voters who cast their ballots and concluded this would not warrant throwing out the vote of the entire district and thereby disfranchising 637 voters. We are not convinced there was error in thus deciding.

The assignments of error are overruled and the order of the court below affirmed at appellants' costs.