## Bauman Election Contest Case.

Argued September 29, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Thomas E. Whitten,* for appellants.

*Louis Rosenberg,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 19, 1945:

This is an appeal from the order of the court below dismissing the exceptions filed to the order of that court dismissing the petition for a contest for the office of Commissioner for the Third Ward in Shaler Township, Allegheny County.

The Return Board made the following return:

Edward T. Bauman, Jr. ...... 122 votes
Elmer Mertz ............... 121 votes

It is argued by the contestants, 24 citizens and qualified electors of the Third Ward, that ballots marked Exhibits "1" and "2", respectively, were improperly rejected by the Return Board. Exhibit "1" was excluded as an improper ballot because in addition to the crosses on it there also appeared on it two "check marks" after the crosses and another slight mark in the square which

is to the right of the name of Elmer Mertz as the Republican candidate for Township Commissioner. This latter was a vertical mark, less than one-eighth of an inch in length, in front of the cross. This mark apparently made inadvertently by the voter, clearly does not invalidate his vote for Mertz. In the party square to the right of the word "Republican" there is a cross which indicates that the voter wished to vote for the Republican candidates for all the offices named on the ballot. Whatever mark this voter placed in the square to the right of Mertz's name was mere surplusage and nugatory. The fact that the voter made both a cross *and* a check mark after the name of the Democratic candidate for Judge of Election and after the name of the Republican candidate for Constable and the fact that he wrote "No good" after the name of one of the Democratic candidates for School Director does not invalidate the entire ballot. The provision in sub-section (a) of sec. 1223 (Art. 12) of the Act of June 3, 1937, P. L. 1333 (25 P.S. 3063), that "No ballot which is so marked as to be capable of identification shall be counted" must be construed with great liberality, for if every ballot which carried upon it some distinctive mark should be invalidated, there is scarcely any limit to the number of ballots which could be rejected for this reason. For example, the same act provided that a voter may "indicate a vote for any person whose name is not printed on the ballot, by writing, stamping or sticker. . . ." By availing himself of this privilege any voter could easily put an "identification" on his ballot. Either the name of the person voted for, or the writing, stamping or sticker might be such and so placed that no other ballot in the box would carry its duplicate. He might also make an identifying "erasure or mutilation in the vote in any office block" without invalidating the ballot except for the candidates in that block. He might also "mark his ballot for more persons for an office than there are candidates to be voted for for such office" without invalidating his ballot except as

to the candidates for such office. All these would be obvious means of making the ballot "capable of identification", yet, under the very provisions of the act the ballot in its entirety would not be void. Many ballots contain smudges or are torn in certain ways. These might possibly be identifying marks but ballots so smudged or torn are not to be rejected simply because of that possibility. When the voter wrote the words "No good" after the name of one of the Democratic candidates for School Director, his apparent idea was *not* to have his ballot bear an identifying phrase but to show that he not only voted against that candidate but also that he was unwilling to recognize that there was any "good" in him. While the expression on official ballots of such excess of personal feelings is not to be encouraged, we think it would be unjust to deprive Elmer Mertz as a candidate for Township Commissioner of the vote the marker of this ballot so unmistakably cast for him. This court said in *McCaffreys' Appeals*, 337 Pa. 552, 559: ". . . not every mark which may separate and distinguish a ballot will necessarily result in a declaration of invalidity, but only such marks as cannot be reasonably supposed to have been made by the voter except for the very purpose of distinguishing his ballot. . . ."

Exhibit No. 1 contains *no* marks which can be "reasonably supposed" to have been made by the voter *for the purpose* of distinguishing his ballot, and it would be unjust not to count the vote given by that ballot for Elmer Mertz for the office indicated. Election officers would have enough power to change in many instances the result of an election if they were permitted to throw out every ballot which contained marks which were not contained on any other ballot. The power to throw out a ballot for minor irregularities, like the power to throw out the entire poll of an election district for irregularities, must be exercised very sparingly and with the idea in mind that either an individual voter or a group of

voters are not to be disfranchised at an election except for compelling reasons. In *Ayre's Contested Election,* 287 Pa. 135, 138, 135 A. 477, this court said: "To warrant throwing out the vote of an entire district the disregard of the law must be so fundamental as to render it impossible to separate the lawful from the unlawful votes. See opinion by Judge THAYER in *Daly v. Peteroff,* 10 Phila. 389". In *Carbondale's Election,* 280 Pa. 159, 124 A. 298, this court sustained the action of the lower court in refusing to "throw out the entire district" because of certain irregularities on the part of the election officers. This court in its opinion emphasized the fact that "the purpose in holding elections is to register the actual expression of the electorate's will" and that "computing judges" should endeavor "to see what was the true result". There should be the same reluctance to throw out a single ballot as there is to throw out an entire district poll, for sometimes an election hinges on one vote. We decide that Exhibit No. 1 contains a valid vote for Elmer Mertz for the office of Commissioner for the Third Ward in Shaler Township, Allegheny County, and it should be counted for him.

As to Exhibit No. 2, the voter instead of making his cross with only *two* diagonal lines crossing each other in the center, made in addition thereto a third and parallel line from the left of the square to the right, passing about one-sixteenth of an inch below the center of the properly crossed diagonal lines. The voter thus indicated his choice by a proper X and then added the meaningless line. We do not think the mark described made the ballot void as being in contravention of the provision in section 1223 (a) supra, which reads as follows: "Any ballot marked by any other mark than an (X) in the spaces provided for that purpose shall be void and not counted: Provided, however, that no vote recorded thereon shall be declared void because a cross (X) mark thereon is irregular in form." This provision obviously means that if a voter uses any *other* mark than an X to

indicate his choice, that "vote" shall not be counted. For example, if he drew an "arrow" or a "hand" in the square *instead of* a cross, it could not be counted as a vote. That this construction of the provision quoted is the one customarily adopted is indicated by the printed instructions on the ballot used in this case, which, inter alia, read as follows: "A cross (X), not a check mark or any other mark, in the square opposite the name of any candidate indicates a vote for that candidate." But if a voter makes a cross in the square, as this voter did, he has in fact voted even though the cross he made is "irregular in form", as this one was because of the extra line. If, for example, this voter had made his X out of *two* double oblique lines crossing each other the "cross" would be "irregular in form" but it would not be void. A voting cross made in the proper square by a voter does not have to be made of only two perfectly straight oblique lines crossing each other at the exact center. Marking a ballot in voting is a matter not of precision engineering but of an unmistakable registration of the voter's will in substantial conformity to statutory requirements. See *Pfaff v. Bacon,* 249 Pa. 297, 95 A. 71. Since the questioned symbol the voter made in the appropriate square on Exhibit "2" is patently recognizable as a voting cross for Elmer Mertz for the office indicated, it should be counted.

The Act of June 3, 1937, P. L. 1333, Article 14, Sec. 1407, 25 P.S. 3157, provides, inter alia: "No appeal shall be allowed or granted from any order or decree of the Court of Common Pleas made in pursuance of this section." This same provision was contained in the Act of July 9, 1919, P. L. 839. In interpreting this provision, in *Twenty-Eighth Congressional District Nomination,* 268 Pa. 313, 321, 112 A. 74, this court said: "This, however, does not affect our right to issue a certiorari in order to determine, from an inspection of the record, whether or not the court below exceeded its jurisdiction: (*Carpenter's Case,* 14 Pa. 486; *Com. v. Balph,* 111 Pa.

365; *Com. v. Smith,* 185 Pa. 553), and for this purpose to examine the opinion of the court in order to discover the reasons for its action: *Nomination Certificate of John S. Robb, Sr.,* 188 Pa. 212; *Cramer's Election Case,* 248 Pa. 208." In *Armstrong's Appeal,* 293 Pa. 1, 6, 141 A. 633, we said: "In legal effect this is really 'but a certiorari, and on such an appeal judicial review is restricted to the regularity of the record, though in this class of cases . . . findings of fact, contained in the opinion of the court below, may be considered so far as they concern fundamental questions': *Smith's Petition,* 292 Pa. 140; *Independence Party Nomination,* 208 Pa. 108." See also *Foy's Election,* 228 Pa. 14, 76 A. 713.

The order of the Court below which declared Edward T. Bauman, Jr., elected to the office of Commissioner in the Third Ward in Shaler Township is reversed, and it is ordered that a certificate of election be issued to Elmer Mertz for that office. Costs to be paid by the Township of Shaler.

DISSENTING OPINION BY MR. JUSTICE DREW:

I would not reverse the court below, but would affirm its decision, because it is my opinion that it committed no error in excluding the two disputed ballots.

At the municipal election of November 2, 1943, there was to be filled the office of Township Commissioner for the Third Ward of Shaler Township, Allegheny County, the nominees for which were Edward T. Bauman, Jr., Democrat, and Elmer J. Mertz, Republican. One hundred twenty-one votes were cast for each of these nominees, but the election board rejected two ballots (marked for identification Exhibits "1" and "2") for Mertz, among others. During the period that the returns were being tabulated by the return board, a soldier ballot was received and credited to Bauman, thus making his total vote 122. A petition was filed in the court of common pleas and the ballots in the box were recounted. The recount board also rejected the two ballots, and Bauman

was declared elected. An election contest was then filed in the common pleas court by twenty-four citizens and qualified electors and, after hearing, this was dismissed. A final order dismissing exceptions was filed and this appeal followed.

I think a careful examination of the disputed ballots shows that both should be rejected, because the markings on each violate specific provisions of the Pennsylvania Election Code, Act of June 3, 1937, P. L. 1333. Article XII, §1223 of that statute provides, inter alia: "(a) No ballot which is so marked as to be capable of identification shall be counted. . . . Any ballot marked by any other mark than an (X) in the spaces provided for that purpose shall be void and not counted: Provided, however, That no vote recorded thereon shall be declared void because a cross (X) mark thereon is irregular in form. Any erasure, mutilation or defective marking of the straight party column at November elections shall render the entire ballot void, unless the voter had properly indicated his choice for candidates in any office block, in which case the vote or votes for such candidates only shall be counted. Any erasure or mutilation in the vote in any office block shall render void the vote for any candidates in said block, but shall not invalidate the votes cast on the remainder of the ballot, if otherwise properly marked. . . ."

The ballot, Exhibit "1", contains the following incorrect markings: (a) a figure consisting of three intersecting lines in the straight party column; (b) the words "no good" written in the School Director block, opposite the name of Bernard F. Hahn; (c) the adding of check marks to the crosses placed in the spaces provided in the Constable block, opposite the name of Norman Byerley, and in the Judge of Election block, opposite the name of Jacob P. Burkhart, Jr.; and (d) the insertion of a small vertical line to the left of the crossmark in the Township Commissioner block, opposite the name of Elmer Mertz.

The validity of the other ballot, Exhibit "2", is attacked on the ground that opposite the names of the various candidates in eight separate blocks there were placed identical marks, which identified the ballot, each consisting of two intersecting diagonal lines with a horizontal line drawn across the diagonal ones at or about the point where they intersect.

The three-line figure in the straight party column on Exhibit "1" clearly is a defective marking, within the meaning of the Pennsylvania Election Code. Therefore, the insertion of this figure voids the ballot, at least so far as the vote for Township Commissioner is concerned, since the voter thereof did not properly indicate his choice for a candidate in the block for that office. In my judgment, the other marks on the ballots disqualify them, if for no other reason than that the markings thereon make them capable of identification.

I do not agree with the majority that the legislature intended that the provision of the Pennsylvania Election Code that "No ballot which is so marked as to be capable of identification shall be counted" must be construed "with great liberality". On the contrary, I think it was clearly intended that this provision of the statute should be reasonably interpreted, in order to protect the secrecy of the ballot, which was recognized to be of supreme importance.

It is my opinion that both ballots should also be excluded because they contain marks other than "an (X)". While the cross may be "irregular in form", and need not be made with any degree of mathematical precision, nevertheless in order to be a cross it must be formed by two intersecting lines. That is the only mark sanctioned by the Pennsylvania Election Code. The use of such a mark insures uniformity in ballot marking, and prevents identification of the ballot. By no stretch of the imagination is it possible to bring any of the markings objected to within the category of "an (X)". If the legislature had intended to invalidate merely the vote

cast in the block in which the defective marking was made, rather than to void the entire ballot, it would have so provided, as was done in the case of an erasure, mutilation, etc.

*McCaffreys' Appeals*, 337 Pa. 552, 11 A. 2d 893, is an analogous case. An examination of ballots under consideration in that case shows that the marks on three of them to which objections were raised are quite similar to the defective markings on the ballots in the instant case. It seems to me that we fell into error in that case when we failed to declare invalid ballots, Exhibits "D", "I" and "J", and that we are repeating that error when we do not here declare invalid ballots, Exhibits "1" and "2". I am convinced that the word "omit" thrice written on Exhibit "D", and the extremely large indelible smear or smudge in the party column of Exhibit "J", in *McCaffreys' Appeals, supra*, rendered those ballots void, because the writing and the smear or smudge made the ballots capable of identification, just as clearly as though the voter had initialed the ballots or signed his name thereon; and that the mark on Exhibit "I", composed of more than two cross-marks, made in the Member of Council block, opposite the name of *Michael J. McCaffrey*, was not "an (X)", "irregular in form", but was either an attempted "mutilation" which rendered void only the vote for the candidates in that block; or was a mark other than "an (X)", which made void the ballot in its entirety. I am forced to conclude that we should overrule *McCaffreys' Appeals, supra*, in order to do justice in the instant case, to maintain the intention of the legislature, as plainly expressed in the Election Code, and what is even more important, to protect the secrecy of the ballots of all citizens against identifying marks or irregular or defective markings, which invite fraudulent practices in all elections.

The Election Code sets standards which are the only safe guide to the intention of the voter. The legislature left no choice; compliance with these standards is man-

datory. Whether the improper marking be made through lack of skill, infirmity, or inadvertence makes no difference. Since the voters, whose ballots are here under consideration, disregarded the mandate of the lawmakers and did not avail themselves of an opportunity of obtaining another ballot, as provided by Article XII, §1214 (b) of the Code that "if an elector inadvertently spoils a ballot, he may obtain another upon returning the spoiled one", they automatically disenfranchised themselves. The learned court below could not have found otherwise and very properly excluded both ballots.

I would affirm the order appealed from and declare Bauman to be the person elected to the office of Township Commissioner for the Third Ward of Shaler Township.