414 A.2d 310

In re CONTEST OF 1979 GENERAL ELECTION FOR the OFFICE OF DISTRICT ATTORNEY OF WASHINGTON COUNTY, Pennsylvania.

Appeal of Herman J. BIGI at 80-1-33 and 47.

Appeal of John C. PETTIT at 80-1-56.

Supreme Court of Pennsylvania.

Argued March 6, 1980.

Decided April 25, 1980.

D. Keith Melenyzer, Grayce R. Kovacs, Charleroi, Daniel L. Chunko, Washington, for Herman J. Bigi.

George K. Hanna, Washington, for John C. Pettit.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This case arises out of the 1979 General Election in Washington County, Pennsylvania, involving the race for District Attorney. John C. Pettit was the Republican nominee and Herman J. Bigi the Democratic nominee. The election was conducted by the use of paper ballots. After the initial counting of the ballots in the two hundred five

precincts in Washington County was completed, Pettit had an unofficial lead of fifty-five votes. However, after the recanvassing of the vote, Bigi led by an unofficial forty-eight votes. Prior to completion of the recanvassing, both Bigi and Pettit filed Petitions for a General Election Contest alleging, inter alia, certain errors and irregularities in the various ballots as counted in the precincts. Three Judges, sitting both as the county election board by virtue of the county commissioners running for office and as the court en banc, unanimously ordered that all two hundred five ballot boxes be opened and that each ballot be scrutinized and counted individually in order to ascertain an accurate count.

Upon completion of the recount, numerous ballots went before the court because of challenges made by both sides during the recount. The lower court ruled on over two thousand challenged ballots. Broadly summarized, the challenges to the lower court's rulings fall into three categories: 1) there was a challenge to the decision with respect to ballots which were allegedly fraudulently or erroneously marked; 2) there was a challenge to the decision not to count ballots with numbered corners left on; and 3) there was a challenge to the decision to invalidate ballots containing more than one mark in the straight-party column. Since the ballots with numbered corners left on are not contested on appeal, we will begin with a consideration of Bigi's challenge to the lower court's decision that ballots containing more than one mark in the party column should not have been counted.

In order to describe the nature of the challenge to the decision not to count ballots in which more than one mark appeared in the party column—"double-straight ballots"—a brief description of the ballot will be helpful. The official election ballot prepared by the Washington County Election Office contained the following political party and political body designations in the party column on the upper left-hand side of the ballot:

1. Republican

2. Democratic

3. Vincent Register Wills

4. In some precincts of the various municipalities of Washington County, other alleged political body designations; for example, in the Second Precinct of Centerville, "Fowler for Council"; in the Eighth Ward of the City of Washington, "Comer for Constable"; in the Sixth Ward of the City of Washington, "Muti for Constable"; in the Nineteen Precincts of the City of Washington, "Marshman for Mayor".

A graphic representation of the pertinent portions of both the right and left sides of the ballot is as follows:

| Party Column | | District Attorney (Vote for not more than one) | | |
| --- | --- | --- | --- | --- |
| Republican | ☐ | | | |
| Democrat | ☐ | John C. Pettit | Republican | ☐ |
| Vincent Register Wills | ☐ | Herman J. Bigi | Democrat | ☐ |
| ———— | ☐ | Register of Wills (Vote for not more than one) | | |
| | | Julia Uram | Republican | ☐ |
| | | Kathleen Flynn | Democrat | ☐ |
| | | Vincent Register Wills Josephine Vincent | | ☐ |

Both the Republican party and the Democratic party had a full slate of candidates for offices as to which statewide or county-wide voting was required. The political body "Vincent Register Wills" was represented on the ballot by a single candidate, Josephine Vincent, who was a contender for a single office, the Register of Wills. No other person was listed as a candidate of the "Vincent Register Wills" political body for any other office shown on the ballot.

The one hundred twenty-nine ballots at issue in the present case were marked in one of the two following manners.

I

| Party Column | |
|---|---|
| Republican | ☒ |
| Democrat | ☐ |
| Vincent Register Wills | ☒ |
| ———————— | ☐ |

| District Attorney (Vote for not more than one) | | |
|---|---|---|
| John C. Pettit | Republican | ☐ |
| Herman J. Bigi | Democrat | ☐ |

| Register of Wills (Vote for not more than one) | |
|---|---|
| Julia Uram | ☐ |
| Kathleen Flynn Reda | ☐ |
|    Vincent Register Wills | |
| Josephine Vincent | ☐ |

II

| Party Column | |
|---|---|
| Republican | ☐ |
| Democrat | ☒ |
| Vincent Register Wills | ☒ |
| ———————— | ☐ |

| District Attorney (Vote for not more than one) | | |
|---|---|---|
| John C. Pettit | Republican | ☐ |
| Herman J. Bigi | Democrat | ☐ |

| Register of Wills (Vote for not more than one) | |
|---|---|
| Julia Uram | ☐ |
| Kathleen Flynn Reda | ☐ |
|    Vincent Register Wills | |
| Josephine Vincent | ☐ |

It will be noted that only the two party column marks and no other marks appeared on each of these ballots.

During the recount, all of the double-straight ballots containing either a straight Republican or a straight Democratic vote and a vote for "Vincent Register of Wills" were invalidated by the attorney-master who was appointed by the court to supervise the recount. These ballots were challenged respectively by both parties and eventually, the one hundred twenty-nine such ballots went before the court. Had the ballots not been invalidated, and the votes counted, Bigi would have received a net gain of ninety-two votes.

The lower court ruled on the various challenges to individual ballots, and it also ruled, Judge Bell dissenting, that ballots on which "double-straight" voting was indicated would not be counted. The result of this ruling was that Bigi lost the election by forty-eight votes.

The Election Code provides that persons who wish to vote a straight party ticket must be given an opportunity so to indicate on the ballot.[1] Accordingly, the ballot must be divided into two major parts. A party column, consisting of a list of the names of all of the political bodies or parties, appears to the extreme left of the ballot. The other part of the ballot consists, in the main, of the names and offices for which named individuals, identified by party affiliation, are running. The voter may indicate on the ballot, by placing a mark in a party square, and no other, that he wishes to vote for all of the candidates of a political party; or he may vote for each individual candidate by placing marks in the squares opposite each candidate's name; or he may indicate that he wishes to vote for all of the candidates of his chosen political party except for those candidates whom he has

1. Act of December 10, 1974, P.L. 835 No. 280 § 2, hereinafter The Election Code, 25 P.S. § 2963(a) (Supp.1979) provides in pertinent part:

   To vote a straight party ticket, mark a cross (x) or check (✓) in the square, in the Party Column, opposite the name of the party of your choice. To vote for an individual candidate of another party after making a mark in the party square, mark a cross (x) or check (✓) opposite his name. For an office where more than one candidate is to be voted for, the voter, after marking in the party square, may divide his vote by marking a cross (x) or check (✓) to the right of each candidate for whom he or she desires to vote. For such office votes shall not be counted for candidates not individually marked.

   Act of January 8, 1960 P.L. (1959) 2142 § 2 (The Election Code), 25 P.S. § 2963(f) provides in pertinent part:

   In order that each elector may have the opportunity of designating his choice for all the candidates nominated by one political party or political body, there shall be printed on the extreme left of the ballot, and separated from the rest of the ballot by a space of at least one-half inch, a list of the names of all the political parties or political bodies represented on such ballot which have nominated candidates to be voted for at such election. . . . A square of sufficient size for the convenient insertion of a cross mark shall be placed at the right of each party name or appellation.

individually identified by placing marks in the squares next to the names of each, regardless of their party affiliation, in which case he makes a mark in the party square in addition to the individual marks.

In *In re Recount of Ballots Cast in General Election Held on November 6, 1973 Appeal of Walko*, 457 Pa. 279, 325 A.2d 303 (1974) this Court held that ballots which had been cast with the voter's identification number still attached should have been counted where there was no instruction on the face of the ballot that the corners should be removed before casting and where there was nothing on the record to indicate that voters had received any oral instruction from election officials that the corners should be removed before casting. The court reached this result in spite of a requirement of the Election Code § 3055, which provided: "Any ballot deposited in a ballot box . . . without having the said number torn off shall be void and shall not be counted." 457 Pa. at 287, 325 A.2d at 308. The Court's rationale for this holding was that while it was a proper legislative purpose to attempt to insulate the voter from untoward influences in the exercise of his judgment by eliminating any device by which any particular ballot might be identified, it would be an unreasonable encroachment on the franchise to refuse to count these ballots where the voter had complied with all instructions on the ballot and where there was no showing of improper influence, 457 Pa. at 288, 325 A.2d at 309. Similarly, in *Reading Election Recount Case*, this Court stated:

> As enunciated in the *Norwood* case [382 Pa. 547, 116 A.2d 552 (1955)], the power to throw out a ballot for minor irregularities should be sparingly used. It should be done only for very compelling reasons. Again, in *Bauman*, [351 Pa. 451, 41 A.2d 630 (1945)] . . . we said at page 456 of 382 Pa. [41 A.2d 630]: "Marking a ballot in voting is a matter not of precision engineering but of an unmistakable registration of the voter's will in substantial conformity to statutory requirements."

410 Pa. 62, 65–66, 188 A.2d 254, 256 (1963). Finally, this Court in *James Appeal* has cited with approval 29 C.J.S. § 7 page 27:

"Election laws will be strictly enforced to prevent fraud, but ordinarily will be construed liberally in favor of the right to vote. All statutes tending to limit the citizen in his exercise of the right of suffrage should be liberally construed in his favor. Where the elective franchise is regulated by statute, the regulation should, when and where possible, be so construed as to insure rather than defeat the exercise of the right of suffrage. Technicalities should not be used to make the right of the voter insecure. No construction of a statute should be indulged that would disfranchise any voter if the law is reasonably susceptible of any other meaning."

377 Pa. 405, 408, 105 A.2d 64, 65–66 (1954).

■ In addition to the policy favoring enfranchisement reflected in the case law, Section 3063 of the Election Code provides that even where a ballot is defective as to a part of the vote which is indicated, the part that is not defective shall be counted:

If an elector shall mark his ballot for more persons for any office than there are candidates to be voted for for such office, or if, for any reason, it may be impossible to determine his choice for any office, his ballot shall not be counted for such office, but the ballot shall be counted for all offices for which it is properly marked.

Section 3063 (Supp.1979). Both the Election Code and the pertinent case law, then, reflect a policy of protection of the franchise when the voter's intent can be determined and where any minor non-compliance with statutory requirements is not the fault of the voter.

At the outset we observe that this dispute would not have arisen had voting machines been used in this election. The problem at its root is that the paper ballots used in the election were ambiguous as to how certain kinds of votes were to be recorded or indicated on the ballot. The two ambiguous features of the ballot were, first, that the names

of some candidates were printed both in the party column and also in the portion of the ballot reserved for the names of individual candidates and the offices for which they were running, leaving it unclear as to how to vote for an individual whose name appeared in both places. Second, the instructions on the ballot did not clearly indicate that to vote both for a political party and an individual candidate of a different party, the voter must place only one mark in the party column and another mark in the right-hand, individual section of the ballot.

Bigi contends that the ballots in question here are of improper form because the ambiguous format frustrates the essential purpose of § 2963 to safeguard the voter franchise.[2] He argues, nevertheless, that voter intent on these ballots can be determined and that the ballots must, therefore, be counted. Further, Bigi argues that the County Board of Elections has a duty both to provide adequate instructions on the ballot and to forbid the adoption of political party or political body names which contain the proper name of the only candidate and the name of the particular office which that candidate seeks.

■ Because we agree that the instructions on the ballots in question were defective in not setting forth that only *one mark* would be permitted in the party column, and that the placing of more than one mark in that column would invalidate the ballot, we do not reach the question of whether the County Board of Elections may forbid the use of the candidate's personal name in the appellation of his one-candidate political party or body.

The instructions on the ballots, in pertinent part, provide as follows:

"To vote a straight party ticket, mark a cross or checkmark in the square in the party column opposite the name of the party of your choice. A cross or checkmark in the square opposite the name of any candidate indicates a vote for that candidate. To vote for an individual candi-

---

**2.** The various provisions of 25 P.S. § 2963 pertain to the format of a proper ballot.

date of another party after making a mark in the party square, mark a cross or checkmark opposite his or her name."

In the context of this ballot, these instructions could reasonably be taken to mean that a voter could vote a Republican or Democratic ticket by placing a mark in the appropriate square in the party column, and also vote for Vincent as an individual candidate by placing a second mark in the party column next to "Vincent Register Wills." Ambiguity could have been avoided by instructions on the ballot stating that a voter may not mark more than one square in the party column and that all votes for individual candidates must be marked in squares appearing to the right of the individual candidate's name in the right hand portion of the ballot.

At a minimum, we conclude that the errors made by voters on the ballots in question were the result of ambiguities created by the use of political body names containing the proper names of candidates in one-candidate political bodies, coupled with the absence of complete and unambiguous instructions. In other words, the errors made in marking the ballots were not the fault of the voters. The ultimate question before us, then, is whether, consistent with the general policy of protecting the franchise, the ballots in question should have been counted. We believe so. On the facts of this case, when a voter marked two squares in the party column, one for the Republican or Democratic party, and one for "Vincent Register Wills," a political body having only one candidate for one office, it is clear that, for all offices except Register of Wills, all Republican or Democratic candidates (as the case may be) receive a vote. With respect to the Office of Register of Wills, Vincent receives a vote instead of the Republican or Democratic candidates for that office.[3]

3. The same principle of interpretation applies to the several triple-straight ballots which were cast, with votes for one major party and two one-candidate parties having the candidate's name in the party appellation.

■ Pettit contends that counting the double-straight ballots will create non-uniformity in the holding of elections as between districts where paper ballots are used and those using voting machines. We disagree. In our opinion, if the voters in Washington County had voted by voting machine instead of by paper ballot, they would have produced the same result that we reach here. While voting machines will not permit any double-straight votes to be registered,[4] it is this very fact which causes us to conclude that the results in this election would be uniform: when a voter using a voting machine is faced with the realization that a double-straight vote cannot be indicated on the machine, the voter who wishes to vote for an individual candidate as an exception to his straight party ticket vote is then forced to indicate his vote in the proper manner. No such device or safeguard is operative when paper ballots are used. Had the ballot here contained proper instructions for the recording of votes, we would agree that counting the double straight votes would produce an absence of uniformity in elections. Absent proper instructions, we conclude that counting the double straight ballots does not, in this case, lead to non-uniformity.[5]

Pettit's final argument concerning the double-straight ballots is that Pennsylvania case law has established that they may not be counted. We disagree. The majority below relies mainly on two cases in support of the proposition that double-straight ballots may not be counted: *McCaffreys' Appeal*, 337 Pa. 552, 11 A.2d 893 (1940) and *Sholter's Appeal*, 325 Pa. 48, 188 A. 112 (1936).[6] As Judge Bell indicates in his dissent below, these cases are distinguishable from the case before us now. In neither of these cases did the political

4. A voting machine is mechanically structured to automatically lock out other party columns once a straight-party vote is cast.

5. It should be emphasized that henceforth if the ballot contains proper instructions, double-straight ballots of the sort at issue in this case will not be counted.

6. The facts in this case may be found at *Counting of Votes, First Precinct, Middle Paxton Township*, 43 Dauphin County Reports 180 (1939).

parties or bodies involved utilize proper names of the candidates or descriptions of the particular office for which the candidates were running. In *Sholter's Appeal* generic terms were used in the party column as follows: Republican, Democratic, Old Age Pension Party, Thomas Jefferson Party. In *McCaffreys' Appeal*, the only two parties that appeared in the party column were Republican and Democratic. In the present case, the election officials used the political body name "Vincent Register Wills" in which both the candidate's name and the office for which she was running were contained. These factors were not present in the earlier cases.

■ We note, however, that in the present case there were ballots in some districts in which the party column appears as follows:

Republican ..................................... □
Democratic .................................... □
Vincent Register Wills ......................... □
Independent Supervisor ........................ □

In two of these ballots, both the Democratic and the Independent Supervisor boxes are checked. The Independent Supervisor party had one candidate who was running for the office of Supervisor. While it seems likely that the persons who marked these ballots intended to vote for the independent candidate who was running for supervisor as an exception to his otherwise straight Democratic ticket, the Independent Supervisor party does not contain the name of the candidate. These two ballots are, therefore, different from the other contested ballots in this case and are analytically identical to the ballots in *Sholter's Appeal*, where the Old Age Pension Party had only one candidate (and no proper name in the party appellation), and this Court required that the vote not be counted. Accordingly, these two ballots shall not be counted.

In reviewing the ballots cast in this election in accordance with the principles set out above, we arrive at the following tabulation:

1. There were a total of one hundred twenty nine (129) double and triple-straight ballots cast.

2. One hundred one (101) double-straight ballots were cast for "Democratic" and "Vincent." These will be counted for Bigi.

3. Seventeen (17) ballots were cast for "Republican" and "Vincent Register Wills." These will be counted for Pettit.

4. Six (6) triple-straight ballots were cast for "Democratic," "Vincent Register Wills," and various other one-candidate parties in which the name and office of the candidate appeared in the party appellation. These will be counted for Bigi.

5. Two (2) triple-straight ballots were cast for "Republican" and "Vincent Register Wills" and "Marshman for Mayor" parties. "Marshman for Mayor," like the Vincent party, had one candidate running for one office. These two votes will be counted for Pettit.

6. Two (2) ballots were void because the vote in the Party Column was for "Independent Supervisor" and another party. These ballots are void under the *McCaffrey* and *Sholter* cases.

7. One (1) ballot will not be counted because the vote in the Party Column was for "Vincent Register Wills" and another party, but the vote in the Register of Wills block on the ballot was cast individually for a candidate other than Vincent.

In sum, Bigi received one hundred seven (107) of these votes, and Pettit received nineteen (19).

■ As to the other ballots which have been contested in this election, we have reviewed the record below and are satisfied that the findings and conclusions of the court below are based on substantial evidence, and are therefore, proper and correct. As to the ballots not discussed in the opinion of the court below, Pettit requests that we examine these

ballots in order to determine "the intent of the voter." However, Pettit does not allege with specificity the nature of his challenge to any particular ballot, nor how the court below erred in its rulings thereon. Under these circumstances, we decline to examine these ballots.

Since the opinion of the court below indicates that on the face of the recount, Pettit won the election by forty-eight (48) votes, the net result of our holding in the double-straight controversy is that Bigi wins the District Attorney election by forty (40) votes. That part of the lower court's order relating to the double-straight ballots is reversed and the case is remanded to the Court of Common Pleas of Washington County, Pennsylvania for a computation of the final vote for the office of District Attorney by including in the computation the double-straight votes which were the subject of this appeal. The remainder of said order is affirmed.

ROBERTS, J., filed a concurring opinion in which KAUFFMAN, J., joins.

ROBERTS, Justice, concurring.

Review of the record satisfies me that the Court of Common Pleas of Washington County erred in refusing to consider those ballots at issue here containing more than one mark in the "straight-party column." Like the majority, I believe that those ballots, properly viewed, reflect a net increase of eighty-eight votes in favor of Washington County District Attorney candidate Herman Bigi. Accordingly, the order of the court of common pleas must be reversed and the case must be remanded for a recomputation of votes reflecting this net increase in favor of Bigi. See *In re: Account of Ballots (Reed Appeal)*, 457 Pa. 279, 325 A.2d 303 (1974).

KAUFFMAN, J., joins this opinion.