## East Stroudsburg Election

318

DAVIS, P. J., December 3, 1951.—This matter comes before the court on recount of votes cast in the fifth ward of the Borough of East Stroudsburg, Monroe County, Pa., for the office of constable, at general election held on November 6, 1951.

After the election the county return board made a return of votes cast for constable in that district as follows: Travis J. Seese, 155 votes; Pearley D. Hunt, 154 votes.

Thereafter, upon petition of electors alleging fraud or error in computing the votes for constable in the district, the court appointed a recount board to compute the vote.

The recount board reported that on November 26, 1951, after being duly sworn, they proceeded to recount the votes as directed by the court, and reported that Travis J. Seese received 155 votes and Pearley D. Hunt received 154 votes.

Counsel for petitioners challenged two ballots counted by the recount board. The first ballot, marked exhibit 1, was challenged for the reason that all four corners of the ballot had been torn and removed from the ballot proper. The second ballot, marked exhibit 2, was challenged for the reason that the mark in the box opposite the name of Travis J. Seese was not an X, either regular or irregular, and for the further reason that the particular X is not similar to the other X's made by the elector on his ballot.

The objection to exhibit 2 is easily disposed of. One line is in a diagonal position across the box, neither extremity of which extends to the respective corners of the box. The other line is in an almost vertical position and intersects the diagonal line slightly above

the center of the box. The amount of vertical line extending above the diagonal line is slight. The amount extending below the diagonal line reaches approximately to the bottom of the box. Thus, it will be seen there are two straight lines within the box or square which intersect and the extremities of both lines extend beyond the point of intersection. Two straight lines which cross each other and are contained within the box opposite the candidate's name in our opinion constitutes a "cross mark."

"At elections, the elector . . . may vote for the candidates of his choice . . . by making a cross (X) mark in the square opposite the name of the candidate . . .": Act of June 3, 1937, P. L. 1333, sec. 1215 (c), 25 PS §3055, sec. (c).

"Any ballot marked by any other mark than an (X) in the spaces provided for that purpose shall be void and not counted: Provided, however, That no vote recorded thereon shall be declared void because a cross (X) mark thereon is irregular in form": Act of June 3, 1937, P. L. 1333, sec. 1223 (a), 25 PS §3063(a).

Regarding the second reason, we know of no requirement of the law that all cross marks be similar. An examination of the entire ballot discloses enough similarity of marking to convince us that all of the cross marks thereon were made by the same person. We believe that is sufficient.

The challenge to exhibit 2 is overruled.

The challenge to exhibit 1 is based upon the following section of the Election Code:

"No ballot which is so marked as to be capable of identification shall be counted": Act of June 3, 1937, P. L. 1333, sec. 1223(a), 25 PS §3063(a).

When the ballot is folded vertically once and horizontally once the four corners of the ballot are together and when so placed that the numbered and perforated corner is at the top the other three corners are di-

rectly underneath the numbered corner. An examination of the condition of this ballot convinces us that the numbered and perforated corner and the three other corners were removed in the same operation and at the same time.

This particular section of the Election Code has been construed in an opinion by Chief Justice Maxey as follows:

"The provision in sub-section (a) of sec. 1223 (Art. 12) of the Act of June 3, 1937, P. L. 1333 (25 P.S. 3063), that 'No ballot which is so marked as to be capable of identification shall be counted' must be construed with great liberality, for if every ballot which carried upon it some distinctive mark should be invalidated, there is scarcely any limit to the number of ballots which could be rejected for this reason. For example, the same act provided that a voter may 'indicate a vote for any person whose name is not printed on the ballot, by writing, stamping or sticker. . . .' By availing himself of this privilege any voter could easily put an 'identification' on his ballot. Either the name of the person voted for, or the writing, stamping or sticker might be such and so placed that no other ballot in the box would carry its duplicate. He might also make an identifying 'erasure or mutilation in the vote in any office block' without invalidating the ballot except for the candidates in that block. He might also 'mark his ballot for more persons for an office than there are candidates to be voted for for such office' without invalidating his ballot except as to the candidates for such office. All these would be obvious means of making the ballot 'capable of identification', yet, under the very provisions of the act the ballot in its entirety would not be void. Many ballots contain smudges or are torn in certain ways. These might possibly be identifying marks but ballots so smudged or torn are not to be rejected simply because of that

possibility": Bauman Election Contest Case, 351 Pa. 451, 453-54.

In the opinion in McCaffreys' Appeals, 337 Pa. 552 (1940), Justice Patterson said:

"It is manifest from a mere reading of section 1223 of the Act of 1937 that not every mark which may separate and distinguish a ballot will necessarily result in a declaration of invalidity, but only such marks as cannot be reasonably supposed to have been made by the voter except for the very purpose of distinguishing his ballot, and which are appropriate to that end."

Nothing has been called to our attention by counsel nor can we see anything in this situation that indicates an intention on the part of the elector to make this particular ballot capable of identification. Considering the position of the corners of the ballot when folded and the actual physical appearance of the ballot after the corners were removed we are of the opinion that in removing the numbered and perforated corner as the elector was required to do the other corners were inadvertently removed.

"In Carbondale's Election, 280 Pa. 159, 124 A. 298, this court sustained the action of the lower court in refusing to 'throw out the entire district' because of certain irregularities on the part of the election officers. This court in its opinion emphasized the fact that 'the purpose in holding elections is to register the actual expression of the electorate's will' and that 'computing judges' should endeavor 'to see what was the true result'. There should be the same reluctance to throw out a single ballot as there is to throw out an entire district poll, for sometimes an election hinges on one vote": Bauman Election Contest Case, supra, p. 455.

We believe the return of the recount board reflects the true result.

Challenge to exhibit 1 is overruled.

The return of the recount board is hereby confirmed.

There being no fraud or substantial error in the original computation the sum of $50 deposited with the prothonotary according to law is hereby forfeited to the County of Monroe and the prothonotary is directed to deliver same to the Treasurer of Monroe County. Costs are to be paid by the County of Monroe.

The fee of the recount board is hereby fixed at $15 for each member, to be taxed as part of the costs.