Perles, Appellant, *v.* Northumberland County
Return Board.

Argued May 1, 1964.   Before BELL, C. J., JONES,
COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Myron M. Moskowitz,* for appellant.

*Preston L. Davis,* for intervening appellee.

OPINION BY MR. JUSTICE JONES, July 21, 1964:

The inception of this controversy was the municipal election held on November 5, 1963, in Northumberland County. "Among other officers to have been elected at that election was the entire board of county commissioners, and, consequently, the two judges of the court of common pleas of the county acted as the return board to compute and canvass the votes: Pennsylvania Election Code, Act of June 3, 1937, P. L. 1333, §1403, as amended (25 P.S. §3153) (hereinafter referred to as the Election Code).

"There were four candidates for the three offices of county commissioner and prior to the computation and canvassing of the ballots of absentee electors it appeared that Oscar E. Kehler (D) had received 19,626 votes; W. Fred Kohler, Jr. (R) 19,480 votes; George F. Perles [Perles] (D) 19,060 votes; and Fred E. Hoffman [Hoffman] (R) 18,729 votes. The ballots of absentee electors received by the county board of elections (and not then counted) totalled 765."[1]

146 of the absentee ballots were rejected by the board of elections as bearing postmarks later than election day: See Election Code §§1305-B and 1307-B, 25

---

[1] From the opinion of the court below. Record pp. 69a and 70a.

P.S. §§3149.5 and 3149.7. As the remaining ballots were removed from their outer envelopes, counsel for Perles began to challenge,[2] ultimately challenging 485 of the remaining 619 votes. These challenges were overruled. "After all of the ballots of absentee electors had been thus canvassed (and with the apparent agreement of all parties including the interested candidates, their attorneys and watchers, the tabulators, the county chairmen of the two major political parties, and the two common pleas judges sitting as a return board) *the still-sealed inner envelopes containing the overruled, challenged ballots were commingled with the envelopes containing unchallenged ballots and at that point they were all opened and the ballots therein counted.*"[3] (Emphasis supplied). Perles received votes on 96 of the absentee ballots and Hoffman on 505. When these ballots were tabulated with the other ballots cast, the final result was a victory for Hoffman by 78 votes.

---

[2] The challenges which Perles asserts in his argument on appeal to this Court are instances where ballots were counted (a) where the absentee electors had indicated on the Official Absentee Form that they required assistance in voting (there is no proof that such assistance was offered or received) ; (b) where the Official Application and Official Declaration were signed by the elector's mark, rather than his signature; (c) where there was no reason marked on the official form for the elector's absence from the polls; (d) where the elector had failed to "mark out" a reason for his or her absence on the official absentee form, but placed a small "x" alongside the reason of unavoidable absence because of business, occupation or duty, therefore, allegedly, making it impossible to conclude which reason the elector was indicating; (e) where, as interpreted by the court below, the reason for the elector's absence was that of occupation or, business, the date appearing on the application opposite the elector's signature was different than that appearing opposite the Chief Clerk's signature, therefore, allegedly, showing that the elector did not apply in person for his absentee ballot.

[3] From the opinion of the court below. Record p. 71a.

The counting of the absentee ballots was concluded on November 17, 1963, and the votes were tallied on November 18 and 19. On November 22, 1963, the board signed the official books which confirmed the results of the canvass and computation of the absentee ballots. On November 22, 1963, Perles filed an appeal, and Hoffman moved to dismiss the appeal as having been untimely filed. On December 3, 1963, the two law judges of Northumberland County disqualified themselves from hearing the appeal because they had previously acted as the return board in the election. This Court then appointed Judge R. DIXON HERMAN of the 12th Judicial District to specially preside in the matter. Argument was held on December 18, 1963, and on January 2, 1964, the appeal was dismissed and the order of the County Return Board affirmed. It is from this action of the court below that Perles now appeals.

Our review of this case is in the nature of narrow certiorari. As Mr. Justice EAGEN, speaking for this Court, stated in *Meell Appeal*, 405 Pa. 184, 185, 174 A. 2d 110, a case wherein the validity of certain absentee ballots was challenged: "The appeal from the order of the election board to the court of common pleas was pursuant to the provisions of the Act of June 3, 1937, P. L. 1333, §1407, 25 PS §3157. This statute provides, 'No appeal shall be allowed or granted from any order or decree of the court of common pleas made in pursuance of this section.'

"The scope of review, therefore, in this Court is in the nature of narrow certiorari and the inquiry is limited to a determination of whether or not the court had jurisdiction; whether or not the proceedings were regular; whether or not the court exceeded its power and authority; and, whether or not there was a violation of constitutional rights. *The question of the validity of ballots involved is not for us to say*: [citing cases]." (Emphasis supplied).

It appears that Perles is now asking us, by couching his argument in terms of "jurisdiction" and "authority", to pass again upon the validity of the ballots. This we cannot do: *Meell,* supra.

An examination of the instant record indicates that the court below did have jurisdiction and did not exceed its authority.

Perles urges that the manner of the application by the court below of Article XIII-B of the Election Code[4] to the general election of 1963 is in violation of Article 8, §§4, 7 and 19 of the Pennsylvania Constitution. This question is now raised for the first time and for that reason cannot now be considered. As we said in *Archbishop O'Hara's Appeal,* 389 Pa. 35, 46, 131 A. 2d 587: "It is well settled that, as to appellants, 'matters not raised in, or considered by, the court below cannot be invoked on appeal even though they involve constitutional questions': [citing cases]."

It may not be amiss to note that even if our scope of review did permit us to inquire into the validity of the ballots and, upon such inquiry, we determined that *some* of the ballots were invalid, such a determination would not require the elimination of *all* the absentee ballots, as urged by the appellant. This is an instance where one rotten apple does not spoil the entire barrel. The envelopes containing the votes, to which challenges were made and overruled, were mingled with the unchallenged votes and all the absentee ballots were opened and counted. As a result, there is no possible manner whereby we could determine which votes, if any, were cast illegally.

The disfranchisement of even one person validly exercising his right to vote is an extremely serious mat-

---

4 Act of June 3, 1937, P. L. 1333, §1301-B, added Act of January 8, 1960, P. L. (1959) 2135, §2, as amended, 25 P.S. §§3149.1-3149.8. The Act of August 13, 1963, P. L. 707, No. 379, effective January 1, 1964, is not applicable in this controversy.

ter.  If, assuming, arguendo, *some* but not all of the ballots were invalid, and we should declare *all* the absentee ballots void because of the few that might be invalid, we would be disfranchising a large number of voters whose votes have not been shown to be invalid. In *Norwood Election Contest Case,* 382 Pa. 547, 552, 116 A. 2d 552, this Court stated: "Every rationalization within the realm of common sense should aim at saving the ballot rather than voiding it.  Speaking to this very point, Chief Justice MAXEY stated in the Bauman case [*Bauman Election Contest Case,* 351 Pa. 451, 454, 41 A. 2d 630]: 'The power to throw out a ballot for minor irregularities, like the power to throw out the entire poll of an election district for irregularities, must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons.' "[5]

Order affirmed.  Costs on appellant.

Mr. Chief Justice BELL and Mr. Justice ROBERTS concur in the result.

---

CONCURRING OPINION BY MR. JUSTICE EAGEN:

Since the election involved occurred prior to the effective date of the Act of August 13, 1963, P. L. 707, No. 379, 25 P.S. §3146.8 (Supp. 1963), the scope of our review on this appeal is very narrow and limited.

---

[5] Under Section 1407 of the Election Code, supra (25 P.S. §3157(a)), it is provided: "Any person aggrieved by any order or decision of any county board regarding the computation or canvassing of the returns of any primary or election . . . may appeal therefrom *within two days* after such order or decision shall have been made, whether then reduced to writing or not, to the court of common pleas of the proper county . . . ." (Emphasis supplied). The "order" of the county board in the case at bar was made November 17, 1963. The appeal of Perles was taken on November 22, 1963, more than two days after the board's order. On this ground, the appeal of Perles was subject to dismissal.

We may not inquire into the validity of the ballots involved. Legally, therefore, the result reached in the majority opinion is correct and inescapable.

Albeit, the case presents implications which should not go unnoticed. Serious irregularities in the casting of a large number of absentee ballots are clearly evident which give strong indication that this election may well have been stolen. It is a matter which demands the earnest attention of the law enforcement agencies in order that it shall not happen again and the will of the electorate thwarted by unscrupulous individuals charged with the responsibility of supervising the election machinery.

To me, dishonest and fraudulent election practices smell just as noxious whether they emanate from one area or another.

DISSENTING OPINION BY MR. JUSTICE COHEN:

The record in this case clearly indicates that none of the statutory procedures required for the canvassing of absentee ballots was complied with by the return board or the judge specially assigned to hear this matter on appeal to the Court of Common Pleas of Northumberland County.

This flagrant disregard is aggravated by the fact that two judges of the Court of Common Pleas of Northumberland County constituted the return board and completely disregarded the mandate of the legislature in the conduct of their official responsibilities. The lack of adherence to the legislative requirement was further aggravated when the judge, specially assigned to hear the case, refused to permit appellant to present evidence in substantiation of his contentions.

In *Blatt Appeal,* 414 Pa. 449, 200 A. 2d 882 (1964), this Court handed down an order reversing the lower court and the county board of elections directing them to hold a hearing on each challenged absentee ballot

in conformity with the provisions of the Election Code. How can we do anything other than that in this litigation?

I would vacate the order of the lower court and return this matter to the return board so that a hearing may be held on each challenged absentee ballot.