# City of Wilkes-Barre Election Appeals

Before Pinola, P. J., Brominski, Bigelow and Schiff-man, JJ.

*Joseph V. Kasper*, for appellants.
*Thomas F. Gill*, for respondents.

BROMINSKI, J., for the court en banc. December 27, 1967.—This matter comes before the court on appeal from the decisions of the Court of Common Pleas of Luzerne County sitting as the election return board concerning challenges made to 31 absentee ballots cast in the City of Wilkes-Barre in the general election held on November 7, 1967. The appeal was taken on behalf of the Republican candidates for city council by Joseph V. Kasper, Attorney, Chairman of the Wilkes-Barre City Republican Committee.

The appeal concerns two general classifications of absentee ballots; those ballots approved by the election board and excepted to by Mr. Kasper, and certain ballots rejected by the election board and excepted to by Mr. Kasper.

At argument and by brief, it is indicated both parties agree that the nature of the scope of this court's review is certiorari, and we may reverse the board of elections only for a mistake of law or for a clear abuse

of discretion including a capricious disregard of the testimony: Perles v. Northumberland County Return Board, 415 Pa. 154; Petrucci Appeal, 38 D. & C. 2d 675. Also, as enunciated in Petrucci, supra, both parties submit that the burden of proof is on the challenger to establish the truth of the averment in support of his challenge by a fair preponderance of the credible evidence.

With these essential rules in mind, we shall now address ourselves to individual ballots concerned, and initially to those ballots approved by the election board and excepted to by Mr. Kasper. . .

The first series of ballots to be considered are those of Helen Dougherty, 404 North Main Street, and Mary Mulvay Conway, 402 North Main Street. The nature of these challenges pertains to the applications for absentee ballots. In both instances, applications for absentee ballots were requested on the basis of illness or physical disability and the illness or disability indicated. Thereafter, on the applications the space provided after the words "and the name of attending physician, if any, is .................." is left blank and a registered elector executed the application attesting to the disability. It is the contention of the challenger that the space referred to above, that is, immediately following "physician, if any, is" should be marked "none" in order to allow a registered elector to execute the application instead of an attending physician. The applicable statute is reported in 25 PS §3146.2(e)(2):

"In addition, the application of such electors shall include a declaration stating the nature of their disability or illness and the name of their attending physician, . . . or, if none, by a registered elector unrelated by blood or marriage of the election district of the residence of the applicant".

To sustain the challenge to these ballots would require this court to interpret this provision to read that if there were no attending physician, the applicant must insert the word "none" in the space so provided. This would not be an interpretation of the statute but, in effect, would add a new requirement. The act refers to the attending physician, "if any" or "if none"; then a declaration by an elector of the district.

This problem has been considered in the City of Duquesne Election Appeals, 39 D. & C. 2d 545, 556, and the court there concluded:

"The act nowhere states that the word 'none' must be inserted in the place for listing the name of the attending physician where no physician is in attendance. A reasonable interpretation suggests that if this space in the application is left blank, it is tantamount to saying 'none' or that no physician is in attendance and, therefore, the certification may be made by a registered elector".

We concur with this conclusion and dismiss the exceptions to the ruling of the election board as to these two ballots.

We will now consider the exception to the dismissal of the challenge to the ballot of Patricia Loughran, 28 Hillard Street, Wilkes-Barre. The ballot was challenged because the applicant filed duplicate applications. Both applications contain the same information except that they bear different dates, to wit, October 21, 1967, and October 22, 1967. The first reason why this election board dismissed the challenge to this ballot is that it was established that, despite the duplicate applications for an absentee ballot, the applicant mailed and returned only one ballot and only one ballot was received by the election bureau. Secondly, the applicant appeared before the election board at the time fixed for hearing on the challenge to her ballot and testified:

"Q. Now, Patricia, there has been indicated here

that 2 applications for absentee ballots were submitted to the Election Board with your name on and allegedly with your signature, could you tell the Court why there would be 2 applications rather than one?

"A. When we didn't receive an application, my husband checked up when we were home and in the meantime we received a new application in the mail and we filled this one out and thought the older one wouldn't be answered so we sent both in".

The court was satisfied with this explanation and denied the challenge to the ballot.

Therefore, for both reasons set forth above, the exception to the ruling of the election board is hereby dismissed.

The next type of ballot to be considered is that of Pamela Lisman, 227 South Washington Street, whose ballot was challenged on the allegation that she was not a resident. There was no testimony presented by the challenger in this matter; however, he argues that it should not have been incumbent upon him to do so. His contention is that since the challenge goes to the residency, the burden should be on Pamela Lisman to present one qualified elector of the election district to substantiate the residency, such as would be the case when an elector appears in person at the polling place and a challenge is made as to his residency in the election district and, as such, the elector would be obliged to "produce at least one qualified elector of the election district . . ., who shall make affidavit of his identity or continued residence in the election district": Act of June 3, 1937, P. L. 1333, art. XII, sec. 1210, 25 PS §3050.

We do not abide with this argument. Although there is supporting authority for this (In re Challenge to Absentee Electors Votes with Respect to the General Election Held November 3, 1964, 61 Schuyl. 169, 200), we do not choose to accept it. If we did so, we would

violate that which both parties hereto have already agreed is the law of this Commonwealth, that the burden of proof is on the challenger. We see no reason to shift the burden of proof in this narrow phase of the challenge. To do otherwise would lead one to suggest that in those cases where the abseentee voter's ballot is challenged on the allegation that his signature is not genuine, the voter should present himself to the election board to prove its validity. Or, as to being unavoidably absent from the polls, to require voter, upon challenge to his absentee ballot, to come forth and establish the truth and veracity of the pertinent contents of his application. To be sure, it could lead to the ultimate conclusion that if an absentee ballot is challenged in any respect, the voter must come before the election board and prove his case. It would suggest a presumption of irregularity by challenging the ballot, with the right in the voter to vindicate himself. We conclude it is much more equitable to demand the challenger to assume the burden of proof as is traditional in our system of jurisprudence.

In addition, if the legislature intended what the challenger suggests, they could have very easily incorporated this into the absentee ballot law ab initio, or subsequently, at the time of its amendment.

Therefore, we would sustain the action of the election board and dismiss the exception.

The next ballot to be considered is that of John R. Verbalis, Jr., 31 Sullivan Street, whose ballot was challenged because the date on the declaration was November 4, 1967, while it was postmarked November 3, 1967, quite obviously an impossible situation in the absence of some unusual explanation, and such was the explanation. At the hearing before the election board, Mrs. Irene Verbalis, the mother of the challenged elector testified that her son was a college student and would be at school the day of election and

that she obtained for him an absentee ballot which although of no legal moment, was his first experience in voting. She continued testifying that her son, John, filled out the ballot and he asked her what date he should put on the declaration. She replied: "put tomorrow's date because I have some mail to go out . . . I told him to put it on the hall table, which we always put the outgoing mail and I said, 'I've some typing to do.' I have been doing some typing at home, and I said, 'Tomorrow I will mail it.' I was going to work like as of now and there was some mail I had done which I didn't expect to do. I picked it all up, took it to the mailbox and mailed it, and this is how this happened, and I didn't think anything of it really".

The election board was satisfied with the explanation and, accordingly, dismissed the challenge and accepted the ballot. A review of the testimony causes this court to come to the same conclusion and the decision of the election board is sustained and the exception is dismissed.

The next ballot to be considered is that of Stella Romiski, 259 Moyallen Street, whose ballot was challenged on the allegation that her signature was not genuine and, secondly, that she was not unavoidably absent from the polls on election day. There was no testimony offered by the challenger regarding the genuineness of the applicant's signature and, accordingly, we would dismiss the exceptions.

As to the "unavoidably absent" phase of the objection, we will first relate that the applicant applied for an absentee ballot on the basis that she would be unavoidably absent from the county on election day because of business or occupation. The first testimony offered by the challenger was that of a witness who attempted to testify as to what a neighbor told the witness about the whereabouts of the applicant on election day. This court sustained the objection to this testimony as

being hearsay and, while the absentee ballot act states that the election board shall not be bound by technical rules of evidence, we do not consider the hearsay rule as such. To allow these proceedings to be based on hearsay testimony, with the truth of the matter not subject to crossexamination, could open the door to serious abuse. The election board was certainly consistent as it sustained objection for both parties as to hearsay evidence.

The only other testimony offered as to the applicant was testimony concerning the applicant's health and nothing about her occupation or business on election day. As a matter of fact, the witness failed to ask her as to her whereabouts on election day.

"Q. Did she tell you whether or not she was around on election day? Do you know whether you asked her that?

"A. No, I didn't ask her that".

Accordingly, we would affirm the decision of the election board and dismiss the objection to this ballot.

The next ballot to be considered is that of Edward Shiner, 22 Lloyds Lane. His ballot was challenged on the allegation that his signature on the application and declaration differed. No testimony was offered as to the difference between the two signatures, and we thus sustain the decision of the election board and dismiss the objection.

President Judge Pinola would dissent to the majority decision on the grounds that the difference in the signatures is obvious.

The next ballot to be considered is that of James Loughran, 75 Simpson Street. His ballot was challenged on the allegation that he had filed duplicate applications for absentee ballots and, secondly, that he is not a resident. As to the duplicate application, we have considered this same reason as to his wife, Patricia Loughran, supra, and abide with that decision.

As to the lack of residency, we must look to the testimony of the applicant's wife. She testified that she and her husband live in Willow Grove, but that her permanent residence is Wilkes-Barre, and testified further that her husband's permanent address is South Wilkes-Barre; that she and her husband are registered in different districts in Wilkes-Barre and that they have been married two years; also, that she has been in Willow Grove some three years, and that they have always felt they would return to this area and are still hoping to come back; further that her address in Wilkes-Barre is that of her father's home; also that she and her husband at all times voted from their respective addresses in Wilkes-Barre and have never registered to vote elsewhere.

What we have then is a husband and wife of two years living together in Willow Grove, Pa., who use two different voting addresses and residences in the City of Wilkes-Barre. The wife, Patricia Loughran, 28 Hillard Street, and the husband, James Loughran, 75 Simpson Street, the essence of the testimony being that they both treat these respective addresses as their permanent ones.

In deciding this problem, the solution becomes somewhat anomalous, since the challenger has not challenged Patricia Loughran's residency, but only her husband's. Therefore, we cannot decide this problem as it is presented on a "joint residence" basis. The challenger urges that the Act of June 3, 1937, P.L. 1333, art. VII, sec. 704, 75 PS §2814(d), reads that a wife takes the residency of her husband and, therefore, that her ballot cannot be valid, since she votes from Hillard Street. Section 2814(d) reads:

"d. The place where the family of a married man or woman resides shall be considered and held to be his or her place of residence, except where the husband and wife have actually separated and live apart, in

which case the place where he or she has resided for two months or more shall be considered and held to be his or her place of residence".

While we do not necessarily agree with the interpretation given this section by the challenger, we will adopt it for the limited purpose of the discussion of the facts before us. Even accepting the challenger's position, we cannot set aside James Loughran's absentee ballot on the basis of lack of residency, since the only testimony as to his residency is the uncontradicted testimony of his wife who testified:

"Q. Where is your husband's permanent address?
"A. South Wilkes-Barre".

This is why we indicated at the outset that the solution may appear somewhat anomalous and, if it appears as such, it is only because of the manner in which it was presented to the election board.

Counsel also raises the question that since the applicant's residence was challenged, he was obliged to present a qualified elector to attest to his residency as is required by the Act of June 3, 1937, P. L. 1333, art. XII, 25 PS §3050. We have previously disposed of this problem with regard to Pamela Lisman, supra.

We would thus affirm the decision of the election board.

The next ballot to be considered is that of Thomas Youkoski, 345 Matson Avenue. This ballot was challenged on the allegation that the voter was able to go to the polls. The application reveals that the voter made application for an absentee ballot, alleging that he would be unavoidably absent on election day because of duties, occupation or business. The only testimony offered by the challenger is that the witness saw the voter riding in his car the day before election, but did not see him on election day. This testimony fails to establish a prima facie case since the elector could well have been away on election day as per his application,

and we agree with the election board that the challenger failed to meet his burden of proof and hereby affirm the decision of the election board and dismiss the challenge.

The next ballot to be considered is that of Nellie Jones, 1275 Washington Street. Her ballot was challenged on the allegation that she was able to go to the polls on election day. Her application read that she expected to be unable to attend her polling place because of illness or physical disability and listed a "bladder and kidney condition" as the incapacity. The challenger offered testimony, through the witness, Anna G. Hartland, that the witness knew the voter for a long time and saw her in church before and since the election, and knew of no disabling condition that would prevent the voter from going to the polls. Further, that although the witness did not see the voter on election day, the application was signed on October 16, 1967, and the witness saw her after that date at church.

The nature of the illness set forth by the voter was one that may, or may not, have been such as to deprive her from going to the polls on election day. However, we will presume for the moment that it might have. Now the testimony of the challenger places the voter in church the Sundays before and after election day. This seems to suggest that the voter might possibly have been able to go to the polls on election day. We are not now saying that she could, but there is uncontradicted testimony that, within the period surrounding election day, she was away from her home. In the absence of contradictory testimony, we conclude that it was an abuse of discretion to disregard competent uncontradicted testimony without any reason being advanced therefor, particularly when the voter has been given written notice that her ballot has been challenged and fails to appear or have someone appear in her behalf to give credence to her position. As a

matter of fact, failure to appear after notice of the proceedings, should be treated as in almost all other proceedings, namely, that it can be presumed that the testimony would have been adverse to voter's cause.

We are here concluding that the challenger has presented a prima facie case to substantiate his challenge and the burden of proof shifted to the voter to establish her position. This she failed to do. Therefore, we would reverse the decision of the election board, sustain the challenge and reject the ballot.

This, then, concludes that group of cases where the election board dismissed the challenges and accepted the ballots; we shall now turn to those cases where the election board sustained the challenges and rejected the ballots.

The first to be considered is that of Samuel Lewis, 121 North Main Street. His ballot was challenged because on the line provided on the declaration for his voting address, he did not list his residence, but the address of his polling place. While this may appear to be a technical reason for dismissing this ballot, it must be remembered that the election board had varying situations of improper listing of addresses and, in all cases, they took the position that it was the voter's responsibility to list completely and correctly all the information on the application and declaration. This is what the legislature prescribed. The election board concluded it was not going to attempt to decide what was an important or unimportant defect, omission or error. What the legislature required the voter to do, the election board required as well. In our opinion, it is not a valid argument to say that a voter should not be disenfranchised for technical reasons. While this is generally true, absentee ballot voting is an extraordinary procedure and, while we do not wish to penalize a voter for technical violations, we are of the opinion that greater injustice could result if an election board were left to its discretion as to which

technical errors or omissions are important and which are not. For example, the application requires name, address, ward, district, length of residence in voting district, party enrollment (in the primary), occupation, date of birth, etc. If any one or several of these requirements are omitted, who shall decide if it is a truly significant omission or error? Is "occupation" more important than "address"? Is length of residence more important than date of birth? Surely all these errors or omissions could be corrected by either the registration department and/or the voter after the applications or declarations have been filed but to allow this could, as stated before, lead to greater injustice. It is the opinion of this court that the best interests of the public and the candidates seeking public office would be best served by requiring strict compliance to the absentee voter law. It is a special privilege afforded by the legislature; we should guard it closely.

Argument might be made that in the case of the John Verbalis, Jr., ballot, supra, we allowed an error to be corrected. We did not really allow an error to be corrected, however. In that case, there appeared to be an inconsistency in the dates and, without amending or changing the declaration, we allowed testimony to explain the apparent inconsistency. We were satisfied with the explanation and denied the challenge to the inconsistency and accepted the ballot. We feel this is substantially different from allowing an erroneous application or declaration to be amended, corrected, or changed, nunc pro tunc.

Therefore, we affirm the decision of the election board and sustain the challenge.

The next ballot to be considered is that of Mrs. John Mayock, 47 South Washington Street. For the purpose of this appeal, the ballot was challenged on the allegation that the voter failed to state her disability. Her application reveals that she applied for an absen-

tee ballot because she would be unable to go to the polls on election day because of illness or physical disability, the nature of which was described as "old age—physically incapacitated". The decision of the election board was that this was not a sufficiently specific statement as to the nature of her disability.

There was no testimony offered in this matter, and we must proceed on the information supplied by the voter in her application.

We would affirm the decision of the election board, because "old age" is not, of itself, a physical disability or an illness. To add to this "physically incapacitated" is of no moment, since it suggests nothing to indicate the "nature" of an illness. The absentee ballot act, as amended in August 13, 1963, P. L. 707, sec. 20, 25 PS §3146.2 (e) (2), specifically requires that "the application of such electors shall include a declaration stating the nature of their disability or illness". If the legislature had not intended something specific, they could have indicated that the application may be made by one who is ill or has a physical disability without requiring anything further as to the "nature" of the disability. We repeat again, the absentee ballot law is a special privilege and should be guarded closely and should not be interpreted too loosely.

We would affirm the decision of the election board and sustain the challenge.

The next ballot to be considered is that of Joseph Ayers, 199 Old River Road, whose ballot was challenged essentially as to the genuineness of his signature. The challenger offered testimony by the witness, Mary Collamer, that she talked with Joseph Ayers, who said he never made application for an absentee ballot. Based on this testimony, the election board sustained the challenge as to the genuineness of the signature. Therefore, we affirm the decision of the election board and sustain the challenge.

The next ballot to be considered is that of Helen F. Selecky, 71 Marlborough Avenue, whose ballot was challenged on the allegation that she was able to vote at the polls and a discrepancy in signature. The challenger offered testimony of the witness, Mary Collamer, who testified she talked with Helen F. Selecky and was told that she never made application for an absentee ballot. As a matter of fact, the witness, Michael C. McHugh, Esq., after receiving the voters' certificates of the twelfth ward, second district, the district in which Mrs. Selecky resides, testified that one Helen F. Selecky did vote at the polls on election day. Because of the apparent palpable error, the election board referred the matter to the office of the district attorney for investigation.

. We would affirm the decision of the election board and sustain the challenge.

The final category of ballots to be considered are those of Marian H. and Fred C. Bell, Jr., 20 Carlisle Street; Earl and Miriam Wolfe, 18 Oak Street; Ralph and Gladys Trax, 92 Willow Street; William and Pearl Ramsay, 60 Wyoming Street, and Raymond W. and Marion Fleugal, 40 Carey Avenue.

The challenge to their ballots essentially is that they were not unavoidably absent from the county on election day because of duties, business or occupation. It is alleged that they were on a vacation trip. The challenger presented the testimony of Clifford W. Bigelow, the General Manager of the Wyoming Valley Motor Club, who testified that he was personally in charge of a cruise leaving New York on November 3, 1967, and returning on November 16, 1967; that on election day, they were on the Island of Curacao, Netherland Antilles, and they stopped at six ports in all. Further that the cruise was organized by the Wyoming Valley Motor Club and the Irem Temple; that all of the above-named individuals were on the cruise and that it was

basically a pleasure trip. Further, that generally they all slept, ate and enjoyed the sunshine and that he saw the individuals involved herein several times a day. Also, he observed none of them engaging in any business transaction, although, on crossexamination, he testified that they could have had business ventures in mind.

The only one who gave testimony on behalf of the voters who were on the cruise was Mrs. Earl Wolfe. She testified she and her husband were on the cruise and they were there because it looked very attractive when advertised and, in going on the cruise, they both treated it as a vacation, since her husband has not been well for several years and has had some operations. On crossexamination, she testified that her husband told his doctor he was going on the trip and the doctor advised that it would be good for his health.

It appears clear that even in the Wolfe case, the testimony did not contradict the testimony of the challenger's witness, Clifford W. Bigelow.

Basically, we are more than satisfied that the challenger met his burden of proof. He placed the voters on a vacation cruise. If perchance they were otherwise engaged in business, they were notified that their ballots were challenged and the date for the hearing on same. If they had appeared and testified that they were on a business trip, we would have had no reason to disbelieve them, but, as in the Nellie Jones case, supra, their failure to appear and give testimony raises the presumption that their testimony would be adverse to their causes.

Accordingly, we would affirm the decision of the election board and sustain the challenges.

ORDER

It is hereby ordered and decreed that the decisions of the election board as to the ballots of Helen Dougherty, Mary Mulvay Conway, Patricia Loughran, Pam-

ela Lisman, John R. Verbalis, Jr., Stella Romiski, Edward Shiner, James Loughran and Thomas Youkoski are hereby affirmed and the exceptions thereto are denied and dismissed, and that said ballots shall be counted along with those of Bernadine Ulicny, Mrs. Charles E. Flynn, Charles A. Collins, Mary Barrett, Florence Zumpano and Eva Petroski.

It is hereby further ordered and decreed that the exception to the decision of the election board as to the ballot of Nellie Jones is hereby sustained, and the decision of the election board is hereby reversed and the ballot rejected.

It is hereby further ordered and decreed that the exceptions to the decisions of the election board as to the ballots of Samuel Lewis, Mrs. John Mayock, Joseph Ayers, Helen F. Selecky, Raymond and Mercia Fluegel, Marion H. and Fred C. Bell, Jr., Earl and Miriam Wolfe, Ralph and Gladys Trax and William and Pearl Ramsay are hereby dismissed, and the decision of the election board is affirmed and the ballots are rejected along with the ballot of Robert F. Dembiac.