## Silver Spring Township Supervisor Election

*Samuel L. Andes*, for appellant.
*Ronald M. Katzman*, for respondent.
*Henry L. Stuart*, for Board of Election.

*SHUGHART, P.J.,* December 9, 1975—The certification of the return board of Cumberland County for the election of November 4, 1975, showed that for the office of Township Supervisor of Silver Spring Township, Oscar F. Shafer received a total of 765 votes and Raymond M. Best received a total of 771 votes. Six absentee ballots were cast in the first precinct of the township, all of which ballots were cast in favor of the candidate Best and these votes comprised his margin of victory.

No challenge to the county board of election was made to the granting of an absentee ballot to any of these six electors during the period commencing on the Tuesday prior to the date of election, or at any time, until a petition was filed in this court on December 2, 1975. The official tally of the board was completed on November 12, 1975; it confirmed that candidate Best was the victor in the Silver Spring Township Supervisor contest by six votes. On November 17, 1975, for the first time, the candidate Shafer presented a petition to the county return board alleging that the six absentee ballots were opened and counted on election day at the polling place in a manner not in conformity to the Election Code and asked the return board to strike all six absentee ballots. Such action would have resulted in a tie vote between the candidates Best and Shafer. The return board dismissed the petition and certified the vote to be 771 votes cast for Best and 765 for Shafer. From this action of the return board, an appeal was taken to this court. An objection was made to the improper canvassing of the absentee ballots and, in addition, the petition for the first time challenged the absentee ballots issued to four of the six absentee voters. A hearing has been held, briefs have been filed, and the matter is now ready for decision.

The Election Code, 25 P.S. §3146.8(a), as amended by the Act of December 11, 1968, P. L. 1183, provides that the county election board shall distribute the absentee ballots, unopened, to the electing election districts when the other election supplies are distributed. The section then provides:

"Absentee ballots shall be canvassed immediately and continuously without interrruption until completed *after* the close of the polls on the

day of the election in each election district. The results of the canvass of the absentee ballots shall then be included in and returned to the county board with the returns of that district." (Emphasis supplied.)

It is evident from the testimony of the judge of elections that this procedure was not followed, but, as had been the custom for many years, the absentee ballots were opened between 3 and 4 p.m., because there was a lull in the voting. Present at the opening were the judge, the inspectors and the watchers, including a representative of the candidate Shafer. After the ballots were opened, they were placed back in the election supply and when the polls were closed, the results of the absentee ballots were posted in the return. When this was done, the results of the ballots were announced. At this time, candidate Shafer's wife was present and made no objection. Although there was no calling out when the absentee ballots were originally opened in the afternoon, watchers were present and the judge of elections testified that they could have heard the proceeding if they chose. The list of the absentee voters had been posted at the polling place prior to the opening of the polls.

It is obvious that the procedure followed in this instance was not that prescribed by the statute. On the other hand, no objection was made to the improper procedure at the time and, fortuitously, it appears that no harm resulted therefrom. It is undisputed that all six of the absentee ballots were cast in favor of the candidate Best and none of the ballots have been challenged on this ground. Further, there is no allegation of fraud or willful misconduct on the part of any election official. The improper opening of the ballots earlier than provided

by statute has not changed the result in any way. Argument has been made to the court on the ground that the "commingling" of the ballots resulted in prejudice. This argument falls of its own weight because it is undisputed that all of the voters using the absentee ballot voted for the candidate Best and, therefore, the "commingling" causes no concern in the supervisor election. It is true that the "commingling" may have affected the totals of some of the candidates for other offices, but no one else has objected and no other election will be affected by the result.

The authorization for absentee ballots is designed to extend the right of franchise to those who could not otherwise exercise it, and, as stated by Justice Jones, in Perles v. Northumberland County Return Board, 415 Pa. 154, 158, 202 A.2d 538 (1964):

"The disfranchisement of even one person validly exercising his right to vote is an extremely serious matter." In Absentee Ballots Case (No. 1), 431 Pa. 165, 173, 245 A.2d 258 (1968), the question was raised as to the counting of absentee ballots at the courthouse rather than at the polling place. In speaking of this matter, the court said:

"The only question raised by the appellants is not *how* the votes were counted, but *where* they were counted. It is not contended that if the votes had been counted by the district election boards instead of the county board, the results would have been different. It would therefore be a stultification of reason and justice, as well as a jettisoning of common sense, to throw out 5,506 votes because, in effect, the counters of the votes sat in a brick and stone courthouse instead of a garage, schoolhouse, or empty building as they counted ballots."

This statement is applicable to the instant situation because there is no contention that the tally of the absentee ballots would have been different if the ballots had been opened and counted after the polls had been closed, rather than having been opened earlier and placed aside for tallying at the later time. It would be a gross miscarriage of justice to disfranchise voters without fault on their part simply because of an innocent mistake by the election officials which in no way affected the result of the election.

The challenge to four of the absentee ballots was raised for the first time in the petition to the court almost a month after election day. For this reason alone, these objections are too late to be considered: 25 P.S. §3146.8(e). We reach this conclusion without reluctance, however, because: (1) No challenge at all was made to two of the absentee ballots and the votes of these two would result in a victory for the candidate Best; (2) of the four ballots challenged, three challenges were devoid of merit in light of the testimony given at the hearing. Two were challenged because the voters were in Honolulu, admittedly on vacation, which clearly appears to be a legitimate basis for a granting of an absentee ballot pursuant to 25 P.S. §2602(z-3); (3) the third voter was a student at Indiana University, 165 miles or more from his polling place. Thus, a meaningful challenge could be made to only one of the four ballots.

The attorney for candidate Best, who was permitted to intervene, and the solicitor to the election board both objected to the appellant's petition on the basis that it was filed too late and on other technical grounds as set forth in a motion to dismiss or quash the appeal. In view of our disposition, we

find it unnecessary to pass upon these objections even though they appear to have considerable merit.

### ORDER

And now, December 9, 1975, for the reasons set forth above, the application to strike the six absentee ballots in the first precinct of Silver Spring Township in the general election of November 4, 1975, is dismissed, and the official tabulation filed by the return board is affirmed.