IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Six Ballots in the 2024      :
General Primary Election      :
     : No. 629 C.D. 2024
Appeal of: Jamie Walsh      : Submitted: May 31, 2024


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MATTHEW S. WOLF, Judge


<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION
BY JUDGE WALLACE                      FILED: July 3, 2024


Jamie Walsh (Walsh) was a candidate for the Republican nomination for election to the Pennsylvania House of Representatives for the 117th Legislative District. Pennsylvania held its General Primary Election on April 23, 2024, and Walsh appeared to defeat his opponent for the nomination, Mike Cabell (Cabell), by a narrow margin.[1] In this appeal, Walsh challenges the decision of the Board to count six mail-in ballots with allegedly incomplete dates. The Court of Common Pleas of Luzerne County (trial court) affirmed the Board's decision by order dated May 8, 2024. After careful review, we conclude Walsh untimely filed his petition for review, and we vacate and remand for the trial court to dismiss the petition for lack of jurisdiction.

---

[1] According to the Luzerne County Board of Elections (Board), Walsh currently leads Cabell by three votes. Board's Br. at 5.

## BACKGROUND

On April 26, 2024, the Board convened a meeting to adjudicate questions regarding mail-in ballots cast during the 2024 General Primary Election. Walsh acknowledges he and his attorney were in attendance. Pet. for Review, 5/2/24, ¶ 16. During the meeting, the Board voted to compute and canvass 111 mail-in ballots with allegedly incomplete dates on their outer envelopes. The Board "scanned in" the ballots later that day and added the votes to its website. Notes of Testimony (N.T.), 5/6/24, at 21-22.

Specifically, the outer envelopes used during the General Primary Election included a declaration with blank spaces for electors to sign their names and write the month and day. The outer envelopes also included a partially blank year, with the digits "20" preprinted and a blank space to write the digits "24." The electors who cast the 111 mail-in ballots in dispute wrote the month and day but did not write "24" after the preprinted "20." Six of the ballots included votes for the Republican nomination for election to the Pennsylvania House of Representatives for the 117th Legislative District.

The Board submitted its unofficial returns to the Secretary of the Commonwealth (Secretary) on April 30, 2024, which included the votes from the 111 disputed mail-in ballots. Walsh filed a petition for review in the trial court on May 2, 2024. Walsh argued the six mail-in ballots including votes for the Republican nomination for election to the Pennsylvania House of Representatives for the 117th Legislative District should not have been counted because the electors who cast the ballots failed to include the year when they signed and dated the outer

2

envelopes in violation of Section 1306-D(a) of the Pennsylvania Election Code (Election Code).[2]

The trial court convened a hearing on May 6, 2024. The Board opposed Walsh's petition for review, in part, on the basis that he failed to file his petition within two days of its decision to compute and canvass the disputed mail-in ballots under Section 1407(a) of the Election Code.[3] N.T., 5/6/24, at 12-14. The trial court treated the Board's argument as an oral motion to dismiss the case, which it took under advisement. *Id.* at 14. The Board then presented testimony from its Chair, Denise Williams, and the Active Director of Elections, Emily Cook (Cook). Generally, the testimony addressed the Board's meeting on April 26, 2024, and its submission of unofficial returns on April 30, 2024. Cabell filed a petition to intervene on May 8, 2024, attaching a motion to quash and response in opposition to Walsh's petition for review, in which he argued Walsh's petition was untimely. Walsh submitted a letter brief to the trial court that same day, defending the timeliness of his petition.

By orders dated May 8, 2024, the trial court granted Cabell's petition to intervene, denied Cabell's motion to quash, denied the oral motion to quash by the Board's counsel, and denied Walsh's petition for review. In its opinion, the trial court did not address the timeliness of Walsh's appeal but instead proceeded to the merits of his date challenge. The trial court concluded the omission of the digits "24" after the preprinted "20" on the outer envelopes of the disputed mail-in ballots

---

[2] Act of June 3, 1937, P.L. 1333, *as amended*, added by Section 8 of the Act of October 31, 2019, P.L. 552, 25 P.S. § 3150.16(a).

[3] 25 P.S. § 3157(a).

did not constitute a failure to "date" the ballots in violation of Section 1306-D(a).  It reasoned as follows:

> In the 2023 Supreme Court decision, *Ball v. Chapman*, 289 A.3d 1 [(Pa. 2023)], the Court set forth an analysis concerning undated ballots.  In its pertinent part, the Court held that County Boards of Election were to refrain from counting ballots which were **undated** or **incorrectly dated**, which would include those outside the applicable date range. In the case at hand, each of the [111] mail[-]in ballots contained a handwritten date within the permissible date range of April 1, 2024[,] through April 23, 2024. Each contained the month and the day but where the pre-printed envelope had the number 20 and a line, the year was omitted. In finding the ballots were valid, this Court does not believe the decision, in any way, is inconsistent with the ruling of our Supreme Court in *Ball*[.]  Each of the [111] votes had a date that was not an incorrect date. The envelope in which the ballot was placed and where the date was written was specifically produced for the 2024 General Primary Election[,] and therefore, it would stand to reason that the date, as written, could only be for the calendar year 2024. Accordingly, each ballot had a correct date evidencing when the voter signed the ballot. Additionally, the [] Board took guidance from the Department of State indicating that the dates, as written on the [111] [mail-]in ballots should be counted.
>
> . . . .
>
> There was no evidence of fraud concerning these ballots and therefore we find that the decision of the [] Board in choosing to count the [111] which were dated and were within the applicable date range was the correct decision, consistent with the Election Code and Pennsylvania [c]ase [l]aw.

Trial Ct. Op., 5/22/24, at 3-4 (underlining omitted, unnumbered pages).

Walsh timely appealed to this Court.  He argues the omission of the digits "24" after the preprinted "20" on the outer envelopes of the disputed mail-in ballots was a failure to "date" the ballots.  Thus, he requests that we reverse the trial court and direct the Board to exclude the six disputed mail-in ballots that included votes for the Republican nomination for election to the Pennsylvania House of

Representatives for the 117th Legislative District from its final tabulation of election results.[4]

## DISCUSSION

Walsh's appeal requires us to interpret the Election Code. This presents a question of law for which our standard of review is *de novo* and our scope of review is plenary. *In re Benkoski*, 943 A.2d 212, 215 n.2 (Pa. 2007) (citing *In re Carroll*, 896 A.2d 566, 573 (Pa. 2006)). We do not defer to the trial court when reaching a decision and review the entire record on appeal. *Mercury Trucking, Inc. v. Pa. Pub. Util. Comm'n*, 55 A.3d 1056, 1082 (Pa. 2012) (citing *Heath v. Workers' Comp. Appeal Bd. (Pa. Bd. of Prob. & Parole)*, 860 A.2d 25, 29 n.2 (Pa. 2004)). "The object of statutory construction is to ascertain and effectuate the General Assembly's intent. The plain language of a statute is, as a general rule, the best indicator of such legislative intent." *Id.* at 1067-68 (citing *Bd. of Revision of Taxes, City of Phila. v. City of Phila.*, 4 A.3d 610, 622 (Pa. 2010)).

Preliminarily, we consider whether Walsh failed to lodge a timely challenge to the Board's decision under Section 1407(a) of the Election Code. Walsh argues any timeliness challenge is waived because the Board did not file a cross-appeal. Walsh's Br. at 16 n.4. We disagree. The timeliness of Walsh's petition for review goes to the trial court's subject matter jurisdiction. *See In re: Gen. Election for Twp. Supervisor of Morris Twp., Wash. Cnty.*, 620 A.2d 565, 568 (Pa. Cmwlth. 1993). Therefore, it was not necessary for the Board to file a cross-appeal or raise timeliness in this appeal, although it does argue the issue in its brief. *See* Board's Br. at 7-11. Because subject matter jurisdiction is critically important, it may not be waived, and the Court may even raise the issue *sua sponte*. *See Williamson v. Dep't of Transp.*,

---

[4] The Secretary has filed an amicus curiae brief in support of the trial court's decision.

*Bureau of Driver Licensing*, 129 A.3d 597, 600-01 (Pa. Cmwlth. 2015). As a result, we analyze whether Walsh timely filed his petition.

Walsh does not directly address the issue of timeliness in his brief. He does, however, include the letter brief he submitted to the trial court as an appendix. Walsh acknowledges he did not appeal the Board's decision to process mail-in ballots with allegedly incomplete dates or appeal the Board's decision to remove the ballots from their secrecy envelopes, scan them, and post the results. Walsh's Br., App. B. Instead, Walsh maintains he appealed "the Board's decision or order to include four votes for his opponent and two votes for [] Walsh in the unofficial returns that the Board submitted to the Secretary . . . on April 30, 2024." *Id.* Walsh relies on the theory that the Board had discretion to change its mind and exclude the challenged ballots up until the time it submitted the unofficial returns, and he was only "aggrieved" once the Board included the votes from those ballots in the unofficial returns. *Id.*

Section 1407 of the Election Code provides as follows:

> (a) **Any person aggrieved by any order or decision of any county board regarding the computation or canvassing of the returns of any primary or election**, or regarding any recount or recanvass thereof under sections 1701, 1702 and 1703 of this act, **may appeal therefrom within two days after such order or decision shall have been made, whether then reduced to writing or not, to the court specified in this subsection**, setting forth why he feels that an injustice has been done, and praying for such order as will give him relief. If a recount or recanvass is made under section 1404(g), the appeal must be made to Commonwealth Court. Unless a recount or recanvass is made under section 1404(g), the appeal must be made to the court of common pleas of the proper county. Upon the payment to the prothonotary of a fee for filing such appeal, a judge of the court shall fix a time and place for hearing the matter in dispute within three days thereafter, of which due notice shall be served, with a copy of such appeal, by the appellant upon a member of the county board whose action is complained of and upon every attorney, watcher or candidate who opposed the contention of the

6

appellant before the county board, and upon any other person that the judge shall direct, at least two days before the matter shall be reviewed by the court. Proof of such notice or the waiver thereof must be filed therein before any appeal is sustained.

(b) The court on an appeal shall have full power and authority to hear and determine all matters pertaining to any fraud or error committed in any election district to which such appeal relates, and to make such decree as right and justice may require. Pending such appeal, the county board shall suspend any official certification of the votes cast in such election district. None of the orders or decisions of either the county board or the court of common pleas on appeal shall be deemed a final adjudication regarding the results of any primary or election, so as to preclude any contest thereof. No appeal shall be allowed or granted from any order or decree of the court of common pleas made in pursuance of this section. The court of common pleas, upon any appeal under this section, may compel the appellant or any opposing party, other than the county board, to pay all the witness fees, if any, or other legal costs of the hearing, which costs may be taxed by the prothonotary in the usual manner.

25 P.S. § 3157 (emphasis added).[5]

---

[5] Although Section 1407(b) provides that "[n]o appeal shall be allowed or granted from any order or decree of the court of common pleas made in pursuance of this section," 25 P.S. § 3157(b), this Court has explained that appeals from trial court decisions are permissible due to changes in the law after the enactment of the Election Code:

> This section, enacted in 1937, no longer has force since the passage in 1976 of the Judicial Code, which grants this Court jurisdiction over appeals in Election Code cases. In addition, Section 1407(b) existed prior to the passage in 1968 of [a]rticle [V], [s]ection 9 of the Pennsylvania Constitution, which provides that there "shall be a right of appeal from . . . an administrative agency to a court of record or to an appellate court . . . ." Further, the Supreme Court noted in *In re Petition to Contest the General Election for District Justice in Judicial District 36-3-03 Nunc Pro Tunc*, [] 670 A.2d 629 ([Pa.] 1996), that this Court obtained jurisdiction over appeals involving elections when it was created in 1970.

*Dayhoff v. Weaver*, 808 A.2d 1002, 1006 n.7 (Pa. Cmwlth. 2002).

7

Also relevant is Section 1404(f) of the Election Code,[6] which addresses the county board's submission of unofficial election returns:

(f) As the returns from each election district are read, computed and found to be correct or corrected as aforesaid, they shall be recorded on the blanks prepared for the purpose until all the returns from the various election districts which are entitled to be counted shall have been duly recorded, when they shall be added together, announced and attested by the clerks who made and computed the entries respectively and signed by the members of the county board. **Returns under this subsection shall be considered unofficial for five (5) days**. The county board shall submit the unofficial returns to the Secretary . . . by five o'clock P. M. on the Tuesday following the election. The submission shall be as directed by the secretary for public office which appears on the ballot in every election district in this Commonwealth or for a ballot question which appears on the ballot in every election district in this Commonwealth. **At the expiration of five (5) days after the completion of the computation of votes, in case no petition for a recount or recanvass has been filed in accordance with the provisions of this act, or upon the completion of the recount or recanvass if a petition therefor has been filed within five (5) days after the completion of the computation of votes,** the county board shall certify the returns so computed in said county in the manner required by this act, **unless upon appeals taken from any decision, the court of common pleas shall have directed any returns to be revised, or unless in case of a recount, errors in the said returns shall have been found, in which case said returns shall be revised, corrected and certified accordingly**. The county board shall thereupon, in the case of elections, issue certificates of election to the successful candidates for all county, city, borough, township, ward, school district, poor district and election offices, and local party offices to be filled by the votes of the electors of said county, or of any part thereof.

25 P.S. § 3154(f) (emphasis added).

We conclude the appealable "decision" in this matter was the vote at the April 26, 2024 meeting to compute and canvass the 111 mail-in ballots with allegedly

---

[6] 25 P.S. § 3154(f).

incomplete dates on their outer envelopes. The Board did not make any "decision regarding the computation or canvassing of the returns" when it submitted its unofficial returns on April 30, 2024. *See* 25 P.S. § 3157(a). By that time, the Board had already decided to compute and canvass the disputed ballots and acted consistent with that decision by "scanning in" the ballots and adding the votes to its website. N.T., 5/6/24, at 21-22.

Section 1404(f) provides five days for the filing of a recount or recanvass petition after the submission of unofficial returns. It does not refer to the submission of unofficial returns as a "decision," nor does it provide a two-day window in which to appeal the submission of returns. Rather, Section 1404(f) treats the submission of returns as distinct from "any decision" on appeal that might require the returns to be revised. *See* 25 P.S. § 3154(f). The trial court credited Cook, who explained the unofficial returns were merely "a benchmark to see where all the counties are in terms of counting . . . so that [the Department of State is] able to say, no, we don't need to issue a statewide recount by the deadline . . . ." N.T., 5/6/24, at 27-28.

It is helpful to read Section 1407(a) alongside the provisions dealing with computation and canvassing of absentee and mail-in ballots in Section 1308 of the Election Code.[7] Under Section 1308(a) and (g)(5), the county board must hear challenges to mail-in ballots at a "formal hearing." 25 P.S. § 3146.8(a), (g)(5). Subsequently, "[t]he decision of the county board in upholding or dismissing any challenge may be reviewed by the court of common pleas of the county upon a petition filed" within two days.[8] 25 P.S. § 3146.8(g)(6). Section 1308(g)(5) and (6)

---

[7] Added by Section 11 of the Act of March 6, 1951, P.L. 3, 25 P.S. § 3146.8.

[8] The same requirements apply regarding challenges to provisional ballots. *See* Section 1210(a.4)(4) of the Election Code, 25 P.S. § 3050(a.4)(4).

contemplates that a county board's "decision" regarding challenged ballots is the one it makes at a formal hearing, just like the Board made its decision in this case at the meeting on April 26, 2024.

Case law is consistent with our interpretation. A panel of this Court recently addressed a similar issue in *In re: Contest of November 7, 2023 Election of Towamencin Township (Main)* (Pa. Cmwlth., No. 1482 C.D. 2023, filed April 8, 2024). In *Main*, the county board of elections issued a public statement on November 22, 2023, indicating it would canvass certain absentee and mail-in ballots in accordance with a federal court decision. *Id.*, slip op. at 4, 11. The county board's public statement explained it would canvass the ballots on November 27, 2023, and the canvassing proceeded as scheduled. *Id.* The appellants filed a petition on December 4, 2023, the same day the county board certified the results. *Id.*, slip op. at 4. This Court concluded the appellants failed to challenge the county board's decision within Section 1407(a)'s two-day deadline. *Id.*, slip op. at 12. We explained:

> The [the county board's] decision at a public meeting, which included scheduling a specific future date for the recanvass, is a decision of [the county board] for purposes of commencing the two-day appeal period under Section 1407(a). Alternatively, the actual recanvassing, which occurred on November 27, 2023, could also start the appeal period. The December 4, 2023 filing of the [p]etition occurred 12 days after the [county board's] public statement that it would recanvass the disputed mail-in ballots, and 7 days after the actual counting occurred, rendering the [p]etition untimely under Section 1407(a).

*Id.*, slip op. at 12 (citations, emphasis, and quotation marks omitted).[9]

---

[9] We cited *Perles v. County Return Board of Northumberland County*, 202 A.2d 538, 539-40 (Pa. 1964), in which our Supreme Court described "[t]he counting of the absentee ballots" as "[t]he 'order' of the county board" for purposes of Section 1407(a).

10

## CONCLUSION

For these reasons, we conclude Walsh failed to file his petition within Section 1407(a)'s two-day deadline. The Board decided to compute and canvass the 111 disputed mail-in ballots during its meeting on April 26, 2024, and Walsh failed to file his petition for review until six days later, on May 2, 2024. Accordingly, Walsh's petition was untimely, and the trial court lacked jurisdiction to consider it on the merits.[10] *See Gen. Election for Twp. Supervisor*, 620 A.2d at 568. We vacate the May 8, 2024 order and remand for the trial court to dismiss Walsh's petition for lack of jurisdiction.

_____
STACY WALLACE, Judge

---

[10] Based on our disposition, we do not reach the issue of whether the omission of the digits "24" after the preprinted "20" on the outer envelopes of the disputed mail-in ballots was a failure to "date" the ballots.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Six Ballots in the 2024     :
General Primary Election         :
                                :
Appeal of: Jamie Walsh          : No. 629 C.D. 2024

## **O R D E R**

**AND NOW**, this 3rd day of July 2024, the order of the Court of Common Pleas of Luzerne County (trial court), dated May 8, 2024, is **VACATED**, and the case is **REMANDED** for the trial court to dismiss the petition for review filed by Jamie Walsh for lack of jurisdiction.

Jurisdiction relinquished.

_____
STACY WALLACE, Judge